Miguel Antonio APARICIO,
Plaintiff-Appellant,

v.

SWAN LAKE, her engines, boilers,
tackle, Etc., Defendant Third
Party Plaintiff-Appellee,

v.

PANAMA CANAL COMPANY, Third
Party Defendant-Appellee.

No. 79–3945.

United States Court of Appeals,
Fifth Circuit.
Unit A

April 27, 1981.

Pierce & Kiyonaga, David J. Kiyonaga, Balboa, Panama, for plaintiff-appellant.

Dwight A. McKabney, Gen. Counsel, John L. Haines, Jr., Dept. Gen. Counsel, Panama Canal Commission, Miami, Fla., for Panama Canal Co.

Frank J. Violanti, U. S. Atty., Bruce A. Leinback, Sp. Asst. U. S. Atty., Miami, Fla., for Swan Lake.

Before GEE, RUBIN and RANDALL, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The sole issue raised by this appeal is whether landlubbers who do sailor's work aboard ships were dislodged from their *Sieracki* seaman status by the wake of the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act [LHWCA], 33 U.S.C. § 901 *et seq.* We conclude that, if the harbor worker is not covered by the LHWCA, the *Sieracki* cause of action and the concomitant indemnification action afforded the vessel owner are both still seaworthy.

Aparicio and three other harbor workers employed by the Panama Canal Company, an agency of the United States, filed suit against three different vessels to recover for injuries suffered while working aboard those vessels in the Canal Zone. The complaint in each action alleged that the harbor worker's injuries were caused by the vessel's unseaworthiness and the crew's negligence. In answering the third party complaint filed by each of the vessels against the Panama Canal Company claiming breach of the warranty of workmanlike performance, the Company asserted an affirmative defense that any recovery against it was precluded by the exclusive liability provisions of the Federal Employees' Compensation Act [FECA], 5 U.S.C. § 8101 *et seq.* Each vessel owner moved to strike the Company's affirmative defense to the third party complaint. Holding that the 1972 amendments to the LHWCA rendered obsolete the Supreme Court's decisions in *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) (longshoreman afforded seaman status and a cause of action against the vessel for breach of the warranty of seaworthiness) and *Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) (allowing indemnification action by the vessel against the stevedoring company for breach of the warranty of workmanlike performance), the district court in each action denied the motion and ordered that all allegations of breach of the warranty of seaworthiness be stricken from the plaintiff's complaint. The appeal is taken from this interlocutory order.

### I.

Before addressing the merits, we are obliged first to consider our jurisdiction to entertain the appeal despite the parties' failure to raise the jurisdictional issue.[1] The district court included in an interlocutory order entered on November 20, 1979, the statement required by 28 U.S.C. § 1292(b) to certify an appeal from that order.[2] Leave to petition this court to con-

---

1. *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 192 (5th Cir. 1980); *United States v. Beasley*, 558 F.2d 1200, 1201 (5th Cir. 1977); *Wernick v. Matthews*, 524 F.2d 543, 545 (5th Cir. 1975); *Alabama Labor Council v. Alabama*, 453 F.2d 922, 923–24 (5th Cir. 1972).

2. Section 1292(b) sets out three criteria all of which must be met before the district court may properly certify an interlocutory order for appeal. The statute requires the district judge to certify in his interlocutory order that (1) the order involves a controlling question of law in the case (2) as to which there is substantial ground for difference of opinion and (3) an

immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). The district court in this case not only made the proper certification statement in its order but also noted the necessity of resolving all litigation in the District Court for the Canal Zone District by April, 1982, the date set by Congress on which the terms of the district judges for the United States District Court for the District of the Canal Zone expire. *See* Sections 2201–03 and 2206 of the Panama Canal Act of 1979, 22 U.S.C. §§ 3841–44. The United States District Court for the District of the Canal Zone was

sider the appeal was granted by the district court provided the application was made within ten days of the date of the district court's order as required by 28 U.S.C. § 1292(b). Although Aparicio filed a notice of appeal within ten days of the issuance of the district court's order, he failed to apply for permission to appeal within the ten-day statutory period. Therefore, the appeal lapsed.

Over a year after the district court's order issued, another judge serving on that court entered a second order adopting the earlier order and, in effect, recertifying the interlocutory appeal. Within ten days of the issuance of the second order, Aparicio petitioned this court for leave to appeal from the original interlocutory order. Although we granted that application, our jurisdiction to do so is open to discussion.

 Failure to file an application for permission to appeal from an interlocutory order containing the certification statement within the ten-day period prescribed by 28 U.S.C. § 1292(b) and Rule 5(a), Fed.R. App.P., is a jurisdictional defect that deprives the appellate court of power to entertain the appeal.[3] The Federal Rules of Appellate Procedure specifically preclude enlargement of this period by the court of appeals, Rule 26(b), Fed.R.App.P., and there is no statutory authority allowing the district court to extend the time period. 9 Moore's Federal Practice ¶ 205.03[2], at 5–8 (2d ed. 1980). However, we noted in Bors-

key v. American Pad & Textile Co., 296 F.2d 894, 895 (5th Cir. 1961), that the district court retains jurisdiction over the matter until a final judgment is entered and is, therefore, free to reconsider its interlocutory order. The district court's action upon reconsideration may then be the subject of certification and application for interlocutory appeal under 28 U.S.C. § 1292(b). Borskey v. American Pad & Textile Co., 296 F.2d at 895 (dictum).

We have not considered the extent of reexamination by the district court necessary to constitute the kind of reconsideration that revives the right to petition for appeal. The Sixth Circuit has held that the district court may not vacate an interlocutory order from which no application for permission to appeal was timely filed and refile the same order for the sole purpose of permitting the party wishing to appeal to make a timely application. Woods v. Baltimore and Ohio R. R. Co., 441 F.2d 407 (6th Cir. 1971). See Nakhleh v. Chemical Construction Corp., 366 F.Supp. 1221 (S.D.N.Y. 1973) (reconsideration sufficient to permit recertification must involve some "substantial" issue going to the merits of the order). The Woods holding is based on the rationale that the district court should not be allowed indirectly to extend the jurisdictional time period.

In support of the Sixth Circuit's position, it may be argued that the restricted time authorized for initiating an interlocutory

established by 3 C.Z.C. § 1. However, Section 3(d)(2) of the Panama Canal Act of 1979, 22 U.S.C. § 3602(d)(2), requires the President to submit to Congress a request for legislation which would repeal the Canal Zone Code within two years after the October 1, 1979, effective date of the Panama Canal Treaty of 1977. The Panama Canal Act of 1979 extends the terms of the district court judge and other officers of that court for thirty months after the effective date of the Panama Canal Treaty of 1977. Section 2203 of the Panama Canal Act of 1979, 22 U.S.C. § 3843. Thus, all litigation in that court must be terminated by April, 1982.

3. *Cole v. Tuttle*, 540 F.2d 206, 207 n.2 (5th Cir. 1976); *Alabama Labor Council v. Alabama*, 453 F.2d 922 (5th Cir. 1972); *Stelly v. Employers National Insurance Co.*, 431 F.2d 1251, 1252 (5th Cir. 1970) (on petition for rehearing), *cert.*

denied sub nom., 401 U.S. 908, 91 S.Ct. 866, 27 L.Ed.2d 806 (1971); *Borskey v. American Pad & Textile Co.*, 296 F.2d 894 (5th Cir. 1961); *Braden v. University of Pittsburgh*, 552 F.2d 948, 950–51 & n.11 (3d Cir. 1977) (en banc); *Spinetti v. Atlantic Richfield Co.*, 552 F.2d 927 (T.E.C.A.1977); *Hellerstein v. Mr. Steak, Inc.*, 531 F.2d 470, 471 (10th Cir.), *cert. denied*, 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976); *Hanson v. Hunt Oil Co.*, 488 F.2d 70 (8th Cir. 1973); *Woods v. Baltimore and Ohio R. R. Co.*, 441 F.2d 407 (6th Cir. 1971). *See Liberty Mutual Insurance Co. v. Wetzel*, 424 U.S. 737, 745, 96 S.Ct. 1202, 1207, 47 L.Ed.2d 435, 442 (1976). See also 9 Moore's Federal Practice ¶ 205.03[2], at 5–8 (2d ed. 1980); 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure: Jurisdiction § 3951, at 369 (1977).

appeal reflects an interest in speedy determination of such appeals. *See Braden v. University of Pittsburgh*, 552 F.2d 948, 952 (3d Cir. 1977) (en banc). However, the notion that the appeal must follow immediately the entry of the district court's order is repudiated by Rule 5(a), Fed.R.App.P., which permits the amendment of the interlocutory order "at any time" to supply the certification statement and provides that such an amendment triggers the running of the ten-day period for applying to this court for permission to appeal.[4] Because the interlocutory order can be amended at any time in order to incorporate the certification language, the lapse of an extended period of time between the entry of the interlocutory order and the appeal pursuant to 28 U.S.C. § 1292(b) is countenanced by Rule 5(a). *Braden v. University of Pittsburgh*, 552 F.2d at 952. In effect, the ten-day limitation period functions largely to assure that the district court will exercise its discretion to certify an appeal from its interlocutory order contemporaneously with this court's discretionary grant of permission to proceed with the interlocutory appeal. 9 Moore's Federal Practice ¶ 205.-03[2], at 5–9 (2d ed. 1980).

We conclude that the ten-day time limitation is designed to require an expeditious decision by this court as to whether the interlocutory appeal will be permitted and to prevent appeal at a time when an interlocutory appeal would no longer materially advance the termination of the litigation. We decline to interpret the statutory time limit as an absolute bar to a subsequent determination by the district court that, under the circumstances then existing, an interlocutory appeal would satisfy the criteria of 28 U.S.C. § 1292(b) and further the goals that the statute was designed to achieve. Therefore, we hold that, if the district court, upon reconsideration of the Section 1292(b) criteria for certification of an interlocutory appeal, determines that the previous justification for a certification continues to exist, it may reenter the interlocutory order and thus trigger a new ten-day period.[5] *See* Note, Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b), 88 Harv.L.Rev. 607, 615–16 (1975). A contrary interpretation of the statute would preclude an interlocutory appeal under circumstances in which the criteria of the statute are satisfied and both the district court and this court have concluded that an interlocutory appeal is appropriate.

Of course, in reconsidering the certification issue, the district court may take into account the litigant's failure to take advantage of the earlier certification order and may guard against delinquency by refusing to reenter the original order. *Braden v.*

4. Rule 5(a) provides:
 An appeal from an interlocutory order containing the statement prescribed by 28 U.S.C. § 1292(b) may be sought by filing a petition for permission to appeal with the clerk of the court of appeals within 10 days after the entry of such order in the district court with proof of service on all other parties to the action in the district court. *An order may be amended to include the prescribed statement at any time, and permission to appeal may be sought within 10 days after entry of the order as amended.*
 Fed.R.App.P. 5(a) (emphasis added).
 The advisory committee notes to this Rule indicate that Rule 5(a) adopts the "theoretically and practically sound" view taken in *Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697 (5th Cir. 1961); *Sperry Rand Corp. v. Bell Telephone Laboratories, Inc.*, 272 F.2d 29 (2d Cir. 1959) (en banc) and *Houston Fearless Corp. v. Teter*, 313 F.2d 91 (10th Cir. 1962). Rule 5(a) rejects the holding in *Milbert v. Bison Laboratories, Inc.*, 260 F.2d 431 (3d Cir. 1958), that the dis-

trict court's power to amend its order to include the prescribed certification statement is limited to the ten-day period after entry of the order during which time a motion to amend a judgment may be served pursuant to Fed.R. Civ.P. 59(e). *See* Notes of Advisory Committee on Appellate Rules, Rule 5, Fed.R.App.P.

5. The Third Circuit, sitting en banc, appears to have adopted this position in dictum in *Braden v. University of Pittsburgh*, 552 F.2d at 952, holding that the district court may reenter the certification order for the sole purpose of reviving the right to petition for appeal if the party seeking to appeal the order did not receive notice of its entry. *See In re La Providencia Development Corp.*, 515 F.2d 94 (1st Cir. 1975) (apparently assuming that the district court may simply reenter the order containing the certification statement and thus trigger a new ten-day period to petition for permission to appeal).

*University of Pittsburgh*, 552 F.2d at 952. *See* 9 Moore's Federal Practice ¶ 205.03[2], at 5–11 & n.19 (2d ed. 1980). Additionally, we can prevent any abuse of the district court's discretion merely by denying the prospective appellant permission to appeal the interlocutory order.

In the present case, we find that the trial court exercised sound judgment in reentering the interlocutory order and thus recertifying the appeal. The reasons for the earlier certification order continued to exist. Moreover, the district court recognized that an appellate decision in this matter would ultimately advance the termination of not only the present litigation but other similar cases all of which must be concluded by April, 1982, when the United States District Court in the Canal Zone will be dismantled. Given this time constraint, we think the district court did not abuse its discretion by reentering its order certifying the interlocutory appeal.[6] We turn then to the merits of this case.

6. Another possible jurisdictional basis is 28 U.S.C. § 1292(a)(3) which provides for appellate jurisdiction of "[i]nterlocutory decrees of ... district courts ... determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed...." "The term 'interlocutory decrees' in section 1292(a)(3) is broadly interpreted." *Walter E. Heller and Co. v. O/S Sonny V.*, 595 F.2d 968, 971 (5th Cir. 1979). *But see Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 640 F.2d 560, 564 (5th Cir. 1981) (Section 1292(a)(3) "was designed to apply in circumstances distinctive to admiralty where it is not uncommon for a court to enter an order finally determining the issues of liability between the parties and then to refer the case to a master for a determination of damages. Courts have tended to construe this provision rather narrowly and it has not been read to permit interlocutory appeals in admiralty except where the order, regardless of the label affixed to it, had the effect of ultimately determining the rights and obligations of the parties."). "[W]henever an order dismisses a claim for relief on the merits it is appealable under § 1292(a)(3)." 9 Moore's Federal Practice ⸢ 110.19[3], at 210 (2d ed. 1980). *See Jensenius v. Texaco, Inc.*, 639 F.2d 1342 (5th Cir. 1981) [an order that reaches the merits or determines, denies or prejudices any substantive rights of the parties is appealable pursuant to 28 U.S.C. § 1292(a)(3)]. *See generally* 16 C.

Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure: Jurisdiction § 3927 (1977).

The district court's order not only denied the motion to strike the Company's affirmative defense to the third party complaint, but also ordered the cause of action for unseaworthiness stricken from the harbor worker's complaint. Thus the order, in effect, dismissed the claim for breach of the warranty of seaworthiness, although the harbor worker's negligence claim against the vessel remained unaffected by the court's decision. An order that dismisses on the merits one of several separate claims for relief is appealable under Section 1292(a)(3). *Crews v. Arundel Corp.*, 386 F.2d 528 (5th Cir. 1967) (where negligence claim under the Jones Act and unseaworthiness claim under general maritime law were dismissed as time-barred, the order of dismissal is appealable under Section 1292(a)(3) despite the pendency of a maintenance and cure claim). *See* 9 Moore's Federal Practice ⸢ 110.19[3], at 211 & n.10 (2d ed. 1980). *But see Albatross Shipping Corp. v. Stewart*, 326 F.2d 208 (5th Cir. 1964) (partial summary judgment awarding damages for failure to pay maintenance and cure held not appealable under 28 U.S.C. § 1292(a)(3) where personal injury claim against the defendant was still pending).

## II.

To determine what effect, if any, the 1972 amendments to the LHWCA had on those members of the jurisprudentially-created class of *Sieracki* seamen who are not covered by that act, we first review the pre-amendment case-law and examine the legislation and its legislative history before we assess the impact of the congressional action on the remedies available under the *Sieracki-Ryan* construct.

### A. Pre-1972 LHWCA Amendments.

The Supreme Court held in *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), that a longshoreman who does work that has customarily been done by seamen has an action against the vessel owner for damages based on the unseaworthiness of the vessel even though he is covered by a compensation act. The longshoreman is considered a seaman pro hoc vice. *Seas Shipping Co., v. Sieracki*, 328 U.S. at 99, 66 S.Ct. at 880, 90 L.Ed. at 1109. The strict liability action is allowed even though the vessel owner is the longshore-

man's employer. *Reed v. The Yaka*, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963); *Jackson v. Lykes Bros. S. S. Co.*, 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed.2d 488 (1967). *See* G. Gilmore & C. Black, The Law of Admiralty 444–46 (2d ed. 1975). Thus the vessel and its owner become, under some circumstances, liable to the injured longshoreman both in compensation and in tort.

Vessel owners who employed independent stevedores succeeded in shifting their unseaworthiness liability to the longshoreman's stevedore-employer. In *Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), the Supreme Court recognized a warranty of workmanlike service running from the stevedore to the vessel. If the unseaworthy condition of the vessel is chargeable to the stevedore's breach of this implied warranty, the shipowner liable to a *Sieracki* seaman is entitled to full indemnity from the stevedore-employer. Because the shipowner's recovery is based on a contractual right to indemnity, the indemnity is due the vessel despite the limitation in the LHWCA, 33 U.S.C. § 905, restricting the employer's liability to compensation payments. *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. at 128–30, 76 S.Ct. at 234–36, 100 L.Ed. at 138–39. *See generally* G. Gilmore & C. Black, The Law of Admiralty 438–46 (2d ed. 1975).

Federally-employed harbor workers are not covered by the LHWCA but by a separate compensation statute, FECA. We have held that a federal employee engaged, as were all four plaintiffs in this case, as a linehandler[7] in the Panama Canal Zone is entitled to *Sieracki* seaman status and the right to bring an action for unseaworthiness against the vessel on which he was injured while aiding in the vessel's navigation of the Canal. *Sandoval v. Mitsui Sempaku K. K. Tokyo*, 460 F.2d 1163 (5th Cir. 1972). The vessel owner was permitted to bring the *Ryan* indemnity action against the Panama Canal Company[8] despite the FECA provision, 5 U.S.C. § 8116(c), limiting the

---

7. Each of the plaintiffs was employed as a linehandler assigned to a particular lock in the Panama Canal. The linehandlers board the vessel as it approaches the lock and fasten a cable to the vessel attached to the electric locomotives called "mules" which tow the vessel through the lock. Thus, at the time that each of the plaintiffs was injured, he was engaged in the classic seaman's work of handling the lines of the vessel. *Sandoval v. Mitsui Sempaku K. K. Tokyo*, 460 F.2d 1163, 1166 (5th Cir. 1972). Because the linehandlers are not more or less permanently assigned to a particular vessel or to a specific fleet of vessels but instead perform duties abroad any vessel that happens to be navigating the Canal, they do not qualify as "true" seamen. *See Guidry v. Continental Oil Co.*, 640 F.2d 523 (5th Cir. 1981); *Offshore Co. v. Robison*, 266 F.2d 769 (5th Cir. 1959).

8. The Panama Canal Company, formerly the Panama Railroad Company, is an agency and instrumentality of the United States. 2 C.Z.C. § 61(a). (Pursuant to Section 3(b)(5) of the Panama Canal Act of 1979, 22 U.S.C. § 3602(b)(5), the Panama Canal Company is now denominated The Panama Canal Commission.) The waiver of sovereign immunity in both the Suits in Admiralty Act, 46 U.S.C. § 741 *et seq.*, and the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, is specifically made inapplicable to the Panama Canal Company. 46 U.S.C. § 741 and 28 U.S.C. § 2680(m). However, we have found a waiver of sovereign

immunity in Congress' grant to the Panama Canal Company of the authority to "sue and be sued in its corporate name," 2 C.Z.C. § 65(a)(3). *See Payne v. Panama Canal Company*, 607 F.2d 155, 163 (5th Cir. 1979); *Gulf Oil Corp. v. Panama Canal Company*, 407 F.2d 24, 28–29 (5th Cir. 1969) ("[T]he transmutations by the United States, of the political and business direction of the Canal Zone eliminate any doubt that Congress, by severely divorcing political activities from those of physical-business operations, meant to launch the new Panama Canal Company as one exposed to the usual incidents of such business operation.").

Although that waiver of sovereign immunity may be conditioned upon compliance with the claims procedure outlined in 2 C.Z.C. § 271 and §§ 291–97, the waiver of sovereign immunity is liberally construed and thus the statutory requirements are not strictly interpreted. *A/S D/S Svendborg v. Panama Canal Company*, 612 F.2d 968 (5th Cir. 1980); *Gulf Oil Corp. v. Panama Canal Company*, 407 F.2d 24 (5th Cir. 1969).

2 C.Z.C. § 291 provides:

The Panama Canal Company shall promptly adjust and pay damages for injuries to vessels, or to the cargo, crew, or passengers of vessels, which may arise by reason of their passage through the locks of the Panama Canal under the control of officers or employees of the company. Damages may not be paid where the injury was proximately

liability of the United States or its instrumentality to the benefits provided by that act. *Sandoval v. Mitsui Sempaku K. K. Tokyo,* 460 F.2d at 1169. *See Weyerhaeuser S. S. Co. v. United States,* 372 U.S. 597, 601–04, 83 S.Ct. 926, 929–30, 10 L.Ed.2d 1, 5–6 (1963). Thus, the policy considerations that underlie the *Sieracki-Ryan* doctrine are as applicable to the federally-employed FECA employee and his government employer as they are to the privately employed longshoreman or harbor worker covered by the LHWCA and his private employer.

## B. The 1972 LHWCA Amendments.

In 1972 Congress amended the LHWCA to abolish the judicially-created *Sieracki-*

*Ryan* cycle that had effectively nullified the exclusive liability provision of that statute.[9] "Congress acted in 1972 ... to eliminate the shipowner's liability to the longshoreman for unseaworthiness and the stevedore's liability to the shipowner for unworkmanlike service resulting in injury to the longshoreman—in other words, to overrule *Sieracki* and *Ryan.*" *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 260, 99 S.Ct. 2753, 2757, 61 L.Ed.2d 521, 527 (1979). *See Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 260–62 & n.18, 97 S.Ct. 2348, 2355–56 & n.18, 53 L.Ed.2d 320, 331 & n.18 (1977); *Samuels v. Empresa Lineas Maritimas Argentinas,* 573 F.2d 884,

caused by the negligence or fault of the vessel, master, crew, or passengers. If the negligence or fault of the vessel, master, crew, or passengers proximately contributed to the injury, the award of damages shall be diminished in proportion to the negligence or fault attributable to the vessel, master, crew, or passengers. Damages may not be allowed and paid for injuries to any protrusion beyond the side of a vessel, whether it is permanent or temporary in character. A vessel is considered to be passing through the locks of the Canal, under the control of officers or employees of the Company, from the time the first towing line is made fast on board before entrance into the locks and until the towing lines are cast off upon, or immediately prior to, departure from the lock chamber.

2 C.Z.C. § 296 provides:
A claimant for damages pursuant to section 291 or 292 of this title who considers himself aggrieved by the findings, determination, or award of the Panama Canal Company in reference to his claim may bring an action on the claim against the Company in the United States District Court for the District of the Canal Zone. In the action, the provisions of this subchapter, relative to the determination, adjustment, and payment of claims, and the provisions of the regulations established pursuant to section 1331 of this title, relative to navigation of Canal Zone waters and to transiting the Panama Canal, shall apply. An action for damages cognizable under this section shall not lie against the Company, otherwise, nor in any other court, than as provided in this section; nor may it lie against any officer or employee of the Company.
This section does not prohibit actions against the Company's officers or employees for damages for injuries resulting from their acts outside the scope of their employment or not in the line of their duties, or from their acts

committed with intent to injure the person or property of another.
Actions under this section shall be tried by the court without a jury.

2 C.Z.C. § 297 provides:
Notwithstanding any other law, a claim may not be considered under this subchapter, or an action for damages lie thereon, unless, prior to the departure from Canal Zone waters of the vessel involved:
(1) the investigation by the competent authorities of the accident or injury giving rise to the claim has been completed; and
(2) the basis for the claim has been laid before the Panama Canal Company.
We assume that, to the extent these statutory provisions are applicable to the vessel owner's claim for indemnity against the Panama Canal Company, there is substantial compliance with the requirements of those provisions in this case. We note, for example, that as in *Sandoval v. Mitsui Sempaku K. K. Tokyo,* 460 F.2d at 1169, the Company was on notice of the linehandlers' claims because it had been paying them compensation benefits and thus had ample opportunity to investigate the accident as required by 2 C.Z.C. § 297. We have rejected the position that a formal administrative complaint must be filed with the Company as a jurisdictional prerequisite to suit pursuant to 2 C.Z.C. § 296 and § 297(2). *A/S D/S Svendborg v. Panama Canal Company,* 612 F.2d 968, 970 & n.2 (5th Cir. 1980). Therefore, it is likely that the waiver of sovereign immunity is operative in this case.

**9.** *See* H.R.Rep.No.92–1441, 92d Cong., 2d Sess. 4–8, *reprinted in* [1972] U.S.Code Cong. & Ad. News 4698, 4701–05; S.Rep.No.92–1125, 92d Cong., 2d Sess. 8–12 (1972); 118 Cong.Rec. 36265, *et seq.* (Oct. 14, 1972); 118 Cong.Rec. 36376, 36381–36388 (Oct. 14, 1972).

888 (5th Cir. 1978), *cert. denied,* 443 U.S. 915, 99 S.Ct. 3106, 61 L.Ed.2d 878 (1979).

To accomplish that goal, Congress enacted 33 U.S.C. § 905(b),[10] providing a person covered by the act with a negligence action against the vessel, expressly abrogating the "warranty" of seaworthiness and specifically prohibiting the vessel's attempts to seek indemnity from the stevedore employer.

Both the express language of Section 905(b) and the legislative history of the 1972 amendments support the proposition that the congressional action was aimed at longshoremen and harbor workers covered by the LHWCA.[11] The statute itself must be our polestar, for it is black letter law that we do not search for latent intention if a legislative act is clear. Literally read, Section 905(b), which Congress enacted to abolish the *Sieracki* remedy, does not apply to maritime workers who are not within the coverage of the LHWCA. The statute manifests no intention to expand the abolition of the *Sieracki-Ryan* construct beyond the coverage of the LHWCA. We refuse to read into it the abolition of judicially-built remedies as they apply to maritime workers not covered by the LHWCA, including not only FECA-covered employees but those amphibious workers who may be covered only by a state compensation law or who may have no compensation law coverage at all. Had Congress intended to affect the substantive rights of persons not covered by the LHWCA, it could readily have manifested that intention. If we misread the statute and Congress wishes to abolish the *Sieracki* remedy as it applies to FECA workers, an employee group for which Congress might be expected to have particular regard, or for any other group of maritime workers, it is free to do so. The compromise between the previous judicially-created remedy and the new enactment is best struck by Congress.

Moreover, even were we to go behind the statutory language, there is nothing in the legislative history expressly evidencing a congressional intent to liberate from *Sieracki* vessel owners and stevedores not subject to LHWCA liability. Indeed, the legislative history indicates that no member of Congress considered the fact that the *Sieracki* doctrine applies to workers not protected by the LHWCA. The commentators have speculated whether land-based maritime workers not covered by the LHWCA who perform traditional seamen's duties might bring an unseaworthiness action as *Sieracki* seamen despite the 1972 LHWCA amendments.[12] The district courts that

---

**10.** 33 U.S.C. § 905(b), added by the 1972 amendments to the LHWCA, provides:

> In the event of injury *to a person covered under this Act* caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 33 of this Act [33 U.S.C. § 933] and *the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.* If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. *The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this Act.*

33 U.S.C. § 905(b) (emphasis added).

**11.** Section 905(b) is applicable "to a person covered under this Act." 33 U.S.C. § 905(b). In discussing the abrogation of the unseaworthiness remedy the House Report refers to "employees covered under this Act," "longshoremen or other workers covered under the Act" and "[p]ersons to whom compensation is payable under the Act." H.R.Rep.No.92–1441, 92d Cong., 2d Sess. 4–6 *reprinted in* [1972] U.S. Code Cong. & Ad.News 4702–03.

**12.** *See* G. Gilmore & C. Black, The Law of Admiralty 449 (2d ed. 1975); Robertson, Negligence Actions by Longshoremen Against Shipowners Under the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act, 7 J.Mar.L. & Com. 447, 448–49 (1976).

have considered the question have reached conflicting conclusions.[13]

Aparicio and the other linehandlers involved in this case are not covered by the LHWCA.[14] The question is not "whether the *Sieracki-Ryan* construct, although abolished, will continue to rule us from the grave," G. Gilmore & C. Black, The Law of Admiralty 438 (2d ed. 1975), for that statement assumes the answer. The issue instead is whether the LHWCA amendment wipes out *Sieracki* relief for seamen not covered by the LHWCA.

C. *The Aftermath of the LHWCA Amendments.*

Like most legislation, the 1972 amendment was a compromise. The legislative termination of the warranty of seaworthiness owed to the *Sieracki* seaman and the concomitant ending of the stevedore's contractual indemnification of the shipowner

for that liability were enacted as the *quid pro quo* for the increase in compensation benefits payable under the LHWCA[15] and for a limited right to recover in tort from the vessel for negligence. 33 U.S.C. § 905(b). Aparicio and the other maritime workers who are parties to the FECA scheme contend that, not having received the benefit of the bargain struck by Congress in the form of increased compensation payments provided those covered by the LHWCA, they should not be required to relinquish their *Sieracki* seaman status and their unseaworthiness action.

At the time of the 1972 amendments, Congress was not unaware of the level of FECA benefits relative to those payable under the LHWCA. The legislative history of the LHWCA amendments indicates that at least certain members of Congress considered that the FECA benefits had already been raised to an adequate level.[16] In de-

---

**13.** *Compare Pinto v. Vessel "Santa Isabel,"* 492 F.Supp. 689 (D.C.Z.1980) (Panama Canal Company employee permitted to bring the *Sieracki* action for unseaworthiness) and *Guevara v. Cia Sud Americana de Vapores,* 1978 A.M.C. 2000 (D.C.Z.1978) (considering itself bound by the Fifth Circuit pre-1972 precedent of *Sandoval v. Mitsui Sempaku K. K. Tokyo,* 460 F.2d 1163 (5th Cir. 1972), the district court allowed the *Sieracki* unseaworthiness action by the Panama Canal employee and the *Ryan* indemnification action by the vessel owner against the Panama Canal Company) *with Grice v. A/S J. Ludwig Mowinckels,* 477 F.Supp. 365 (S.D.Ala. 1979) (privately-employed longshoreman injured in Saudi Arabia and therefore not within territorial coverage of LHWCA had no unseaworthiness action) and *Quinn v. Central Gulf S. S. Corp.,* 1977 A.M.C. 204 (D.Md.1977) (federal employee not permitted an unseaworthiness action because *Sieracki* is abandoned in light of the 1972 amendments).

**14.** The coverage of the LHWCA is defined by 33 U.S.C. § 903 which precludes coverage under the act for an "officer or employee of the United States or any agency thereof...." 33 U.S.C. § 903(a)(2). That provision also limits the territorial coverage of the act to "the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employee in loading, unloading, repairing or building a vessel)." 33 U.S.C. § 903(a). Section 902(9) defines United States in a geographical sense as "the several States and Territories and the

District of Columbia, including the territorial waters thereof." 33 U.S.C. § 902(9). The navigable waters of the Panama Canal Zone are not "navigable waters of the United States" for purposes of LHWCA coverage. *Williams v. Avondale Shipyards, Inc.,* 452 F.2d 955, 960 & n.16 (5th Cir. 1971); *Panama Agencies Co. v. Franco,* 111 F.2d 263, 265 (5th Cir. 1940). Thus, by virtue of both the exclusion from coverage of federal employees and the territorial restrictions on the coverage of the LHWCA, these federally-employed linehandlers injured in the Panama Canal Zone are not "covered" persons within the LHWCA.

**15.** *See* S.Rep.No.92–1125, 92d Cong., 2d Sess. 9–10 (1972); 118 Cong.Rec. 36381 (Oct. 14, 1972). *See also Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. at 2760 n.18, 99 S.Ct. at 2760 n.18, 61 L.Ed.2d at 531 n.18 (1979).

**16.** During the congressional debate of the bill proposing the 1972 amendments to the LHWCA, one member of the House of Representatives noted the recent 1966 increase in FECA benefits. *See* 118 Cong.Rec. 36382 (Oct. 14, 1972) (remarks of Mr. Daniels). Another House member, comparing the weekly benefits available under FECA with those provided by the LHWCA, commented that the benefits payable under the LHWCA were "way below [benefits payable under] the Federal Employees Compensation Act." 118 Cong.Rec. 36386 (Oct. 14, 1972) (remarks of Mr. Steiger and Mr. Quie).

bating the proposed amendments, the congressmen noted the great disparity between maximum benefit levels available under FECA and the LHWCA, 118 Cong.Rec. 36386 (Oct. 14, 1972), but did not compare the benefits payable pursuant to the LHWCA with the FECA benefits available to a federal employee engaged as a maritime worker who, had he been privately employed and within the territorial coverage of the LHWCA, would have been covered by the LHWCA.

The failure of the congressmen to compare the benefits payable under the LHWCA to those available to a harbor worker or longshoreman covered by FECA reinforces what is evident from the whole of the legislative history of the 1972 amendments: Congress simply did not consider the possibility that maritime workers not covered by the LHWCA qualified for *Sieracki* seaman status under the existing caselaw. It was not unnatural for Congress to focus its effort to abolish the *Sieracki-Ryan* construct on the maritime workers covered by the LHWCA, the workers who constituted the bulk of those to whom the *Sieracki* doctrine is applicable, without considering the fate of those relatively few *Sieracki* seamen not covered by that statute. Nevertheless, we do not consider the failure of these FECA maritime workers to receive the benefits of that compromise dispositive of the availability of the *Sieracki* remedy in this case.

"[T]he Judiciary has traditionally taken the lead in formulating flexible and fair remedies in the law maritime, and 'Congress has largely left to [the Supreme Court] the responsibility for fashioning the controlling rules of admiralty law.' *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 20, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720." *United States v. Reliable Transfer Co.*, 421 U.S. 397, 409, 95 S.Ct. 1708, 1715, 44 L.Ed.2d 251, 262 (1975). "Admiralty law is judgemade law to a great extent...." *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. at 259, 99 S.Ct. at 2756, 61 L.Ed.2d at 526. In *Sieracki* and *Ryan* the Supreme Court formulated remedies to deal with the peculiar perils faced by maritime workers based on policy considerations it determined to be controlling given those conditions of maritime work. Until Congress abrogates the remedies created by the Supreme Court as they apply to maritime workers not covered by the LHWCA, those workers remain entitled to relief and their employers and vessel owners remain bound by the *Sieracki-Ryan* doctrine.[17]

Therefore, we reverse the district court's order requiring Aparicio and the other harbor workers to strike the unseaworthiness cause of action from their complaints and refusing to require the Panama Canal Company to strike from its answer to the vessel's third party complaints the affirmative defense of exclusive liability. We hold that, under circumstances in which the maritime worker is not covered by the LHWCA, the FECA employee may invoke the *Sieracki* unseaworthiness action against the vessel owner who, when held liable to the *Sieracki* seaman, may bring the *Ryan* indemnity action against the Panama Canal Company.[18]

---

17. Recognizing that the holding of this case is limited to those maritime workers not covered by the LHWCA who are participants in the FECA scheme, we note that the pockets of *Sieracki* seamen remaining after the 1972 amendments also may include those longshoremen and harbor workers who, though privately employed, are injured in a foreign country and thus are not within the territorial coverage of the LHWCA. *See, e. g., Grice v. A/S J. Ludwig Mowinckels*, 477 F.Supp. 365 (S.D.Ala.1979) (privately employed longshoreman injured in Saudi Arabia). It is conceivable that American maritime law might apply in such a situation and that the maritime worker could qualify as a

*Sieracki* seaman. Although the maritime workers in this case have available to them the compensation benefits payable under the FECA scheme, the maritime worker injured outside of the territorial coverage of the LHWCA may either be covered by no compensation act or by a compensation scheme that is far more stringent in its benefits than is the LHWCA. *See Grice v. A/S J. Ludwig Mowinckels*, 477 F.Supp. at 367 n.5. The continued availability of the *Sieracki* remedy under such circumstances would assure the maritime worker an adequate recovery.

18. We consider that entity's sovereign immunity to have been waived. *See* note 8, *supra*.

For these reasons the order is RE-VERSED and the case is REMANDED for further proceedings consistent with this opinion.