**ROYAL INTEROCEAN LINES, as owner of the M/V Straat Hong Kong, Plaintiff,**

v.

**PANAMA CANAL COMPANY and M/V Oriental Commander, her engines, boilers, tackle, etc., Defendant.**

**Civ. No. 79-0316-B.**

United States District Court,
D. Canal Zone,
Balboa Division.

May 14, 1981.

David de C. Robles, DeCastro & Robles, Panama, Republic of Panama, for plaintiff.

Frank J. Violanti, U. S. Atty., D. Canal Zone, Balboa, Panama, William H. Beatty, Asst. U. S. Atty., Miami, Fla., for defendant.

JOHN R. BROWN, Circuit Judge.*

This matter came on trial before the Court. All material facts are stipulated by the parties. The only question of law presented to the Court is whether, under the circumstances of this case certain sections of the Canal Zone Code operate to raise the doctrine of sovereign immunity to thereby bar recovery of certain damages by Plaintiff, the owner of the M/V STRAAT HONG KONG, against Defendant, the Panama Canal Company. The Court finds that it does not.

### (i) Stipulated Facts

On June 7, 1977 Plaintiff's vessel, STRAAT HONG KONG, came into the Panama Canal from its anchorage in the Pacific Basin and collided with the M/V ORIENTAL COMMANDER, which was just leaving the Canal, causing damage to both vessels. At the time of the collision, both vessels were being conned by Panama Canal pilots. Soon after the collision, ORIENTAL COMMANDER dropped off its pilot and proceeded on to sea, even though she was informed that if she wanted to take any action for recovery of damages against the Government or against the Panama Canal Company she would have to remain for investigation by the Board of Local Investi-gators. STRAAT HONG KONG made its transit and, unlike ORIENTAL COMMANDER, anchored and remained for the BLI investigation.

A BLI investigation of the collision was conducted at which both the pilot of STRAAT HONG KONG and the pilot of ORIENTAL COMMANDER testified. Save for the fact that crew members of ORIENTAL COMMANDER did not testify the circumstances of the collision were thoroughly investigated. As a result of the investigation it was determined that neither the vessels nor crews, of either STRAAT HONG KONG or ORIENTAL COMMANDER, were responsible in any particular for the collision. The sole cause of the collision was found to be the fault of the pilot of STRAAT HONG KONG for navigating the vessel into the Canal at an excessive speed.

Subsequent to the BLI investigation, STRAAT HONG KONG became subject to an *in rem* action brought in England by the owners of ORIENTAL COMMANDER. This action was ultimately settled for $42,000, consistent with the traditional maritime rule that a vessel is liable *in rem* for the fault of its compulsory pilot.

The present action was initiated by Royal Interocean Lines, as owner of STRAAT HONG KONG, against the Panama Canal Company seeking recovery for damages sustained by STRAAT HONG KONG in the collision and further recovery for sums paid in settlement of the claim by ORIENTAL COMMANDER against STRAAT HONG KONG. The Canal Company has offered to settle the STRAAT HONG KONG vessel damage claim for $52,736.80. The Canal Company declines, however, to reimburse STRAAT HONG KONG for sums paid in settlement of the claim asserted by ORIENTAL COMMANDER, arguing that under the circumstances of this case, STRAAT HONG KONG is not entitled to these damages.

* United States Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

At this point, very little is disputed by the parties. The Canal Company agrees, consistent with the BLI investigation findings, that it is liable to the owner for the damages which STRAAT HONG KONG itself sustained in the collision. The Canal Company further expressly agrees that the settlement was prudent and that the $42,000 paid by STRAAT HONG KONG to ORIENTAL COMMANDER is fair and reasonable. As made clear in the colloquy between Court and all Counsel the effect of the position of the Canal Company is that it agrees that it is 100% liable to M/V STRAAT HONG KONG for all legally recoverable damages which includes specifically her own damages of $52,736.80 and the amount of $42,000 paid by her to ORIENTAL COMMANDER if, but only if, the Court rules that such amount is legally recoverable from the Canal Company. Thus the only issue facing the Court is whether under the circumstances of this case the owner of STRAAT HONG KONG is barred, as a matter of law, from obtaining recovery from the Canal Company for sums paid in settlement of the claim asserted by ORIENTAL COMMANDER against STRAAT HONG KONG.

### (ii) Conclusions Of Law

With respect to STRAAT HONG KONG's claim for the amount paid in settlement, the Canal Company seeks to don the armor of sovereign immunity. Immunity in this case, the Company contends, arises from C.Z.Code Tit. 2, § 297 which provides:

Notwithstanding any other law, a claim may not be considered under this subchapter, or an action for damages lie thereon, unless, prior to the departure from Canal Zone waters of the vessel involved:

(1) the investigation by the competent authorities of the accident or injury giving rise to the claim has been completed; and

(2) the basis for the claim has been laid before the Panama Canal Company. 76A Stat. 25.

Although the Court concedes some difficulty in grasping the true purport of the Canal Company's argument, it appears to run as follows: Because ORIENTAL COMMANDER refused to remain for the BLI investigation, it thereby failed to comply with § 297. Accordingly, pursuant to § 297, the Canal Company became absolved from any liability for damages which might be asserted in a subsequent direct action by ORIENTAL COMMANDER against the Canal Company. Furthermore, and of particular significance to the present controversy, the Canal Company thereby became absolved from any liability for damages which might be asserted in a subsequent "indirect" action by ORIENTAL COMMANDER—here the action by STRAAT HONG KONG against the Canal Company to recover sums paid in settlement of the claim asserted by ORIENTAL COMMANDER against STRAAT HONG KONG.

At the outset the Court emphasizes that the damages sought by the owners of STRAAT HONG KONG, both for vessel damage and settlement payments, arose directly out of the negligence of the Canal Company pilot in conning STRAAT HONG KONG, they represent losses actually sustained by the shipowner as a direct result of the collision. There is no doubt that recovery of such damages against the Canal Company is specifically authorized by C.Z. Code, Tit. 2, § 293 which provides in pertinent part:

In determining the amount of the award of damages for injuries to a vessel for which the Panama Canal Company is determined to be liable, there may be included:

(1) actual or estimated cost of repairs;

\*      \*      \*      \*      \*      \*

(4) other expenses which are definitely and accurately shown to have been incurred necessarily and by reason of the accident or injuries.

To the extent there was ever any question, *Gulf Oil Corporation v. Panama Canal Company* (Gulfspray I), 407 F.2d 24, 29–30 (5th Cir. 1969) settled conclusively that with

the creation of the Panama Canal Company, which gave the Canal Company the authority to "sue and be sued in its corporate name," 2 C.Z.C. § 65(a)(3), and §§ 291, 292, 293 *et seq.*, Congress waived in sweeping fashion the barrier of sovereign immunity. The Canal Company was to function as a business entity and be exposed to the usual incidents of business operation—including the traditional liability of being sued for its wrongs. This sweeping waiver of liability, the Court found, was not intended to be blithely withdrawn by a restrictive application of § 297. *Id.* at 32.

The findings of *Gulfspray I* were more recently echoed by the Fifth Circuit in *Svendborg v. Panama Canal Company*, 612 F.2d 968, 1980 A.M.C. 2852 (5th Cir. 1980) in which the Court, citing *Gulf Oil*, stated: "§ 297 should not be construed to undercut the sweeping waiver of sovereign immunity present in the Code which effectively imposes traditional liabilities on the Company." *Id.* at 970. In *Svendborg* the Court rejected the Canal Company's argument that Plaintiff shipowner's failure to submit an administrative claim to the Canal Company was fatal to its claim. In so doing, the Court refused to follow a District Court case which held that presentation of an administrative claim was a jurisdictional prerequisite to filing suit against the Canal Company. See, *Empresa Hondurena de Vapores, S. A. v. Panama Canal Co.*, 414 F.Supp. 363, 1976 A.M.C. 1619 (D.C.Z.1976). Said the Court: "Because strict construction of the waiver of sovereign immunity as to the Company was expressly rejected by this Court in [Gulf Oil], we decline to adopt the reasoning of *Empresa Hondurena.*" *Id.* at n.2.

■ Bearing in mind these judicial admonitions against ready withdrawal of the waiver of sovereign immunity, the Court concludes that sovereign immunity imposes no barrier to the claims asserted by Plaintiff shipowner in the instant case. The Court finds that STRAAT HONG KONG faithfully complied in all material respects with the two requirements of § 297.

As for subsection (1) of § 297 (the investigation requirement) subsequent to the collision STRAAT HONG KONG remained in the Canal for the express purpose of participating in the BLI investigation. A thorough investigation was in fact conducted at which testimony was heard from the two individuals with the best first-hand knowledge of the facts surrounding the collision—the Canal Company pilots of both STRAAT HONG KONG and ORIENTAL COMMANDER. The Canal Company was given full opportunity to participate in the investigation in an adversarial capacity. The Court is unable to find that the investigation was materially affected by the failure of ORIENTAL COMMANDER, which was fully exonerated, to participate—a circumstance which, at any rate, was completely beyond the power of STRAAT HONG KONG to bring about.

■ As for subsection (2) of § 297 (the notice requirement) the Court also finds full compliance. "The basis for the claim" was adequately presented to the Canal Company through the BLI investigation which completely exonerated both STRAAT HONG KONG and ORIENTAL COMMANDER and adjudged the Canal Company wholly at fault. See, *Svendborg*, 612 F.2d at 970, n. 1. The Court interprets the requirement of establishing a "*basis* for the claim" to mean precisely what it says. This provision does not require a claimant to establish the full measure of the claim with particularity. Thus, the Court rejects the Canal Company's suggestion that § 297 was breached because it was not given the opportunity, immediately following the collision, of surveying the damage sustained by ORIENTAL COMMANDER. It is often the case in maritime collisions that the full extent of damage cannot be immediately and precisely ascertained. We deem it sufficient for § 297 purposes that the Canal Company be timely apprised of (i) the facts from which operational liability of the Canal Company can be ascertained, (ii) that damage has occurred, which undeniably was the case here, and (iii) that the precise extent of damage will be later established with particularity. The Court places great weight

on the fact that the settlement between STRAAT HONG KONG and ORIENTAL COMMANDER for damage sustained by ORIENTAL COMMANDER was effectuated pursuant to an *in rem* action in England, a country with extensive experience in maritime matters. Nor can we ignore the fact that the Canal Company now agrees that the settlement was prudent, fair and reasonable.

The upshot is that the Canal Company knows everything it would have known had ORIENTAL COMMANDER tarried in the zone for the BLI investigation. And of greatest significance the problem is not one of allowing ORIENTAL COMMANDER to recover damages against the Canal Company. Rather it is a loss sustained or incurred by STRAAT HONG KONG directly as a result of the flagrant and sole fault of the Canal Company's agent, the pilot. Most important is that *Gulfspray III*, 481 F.2d 561, 569 (5th Cir. 1973) recognizes that in creating liabilities of the Canal Company under §§ 291, 292, 293, 296:

> Congress must have meant that, except for a few very rare situations, it was establishing, by a code, a recovery of damages substantially parallel to that accorded by the general maritime law, and certainly that of England and the United States.

The Court there went on to say:

> For damage arising out of the operation of the Canal the objective was to subject the Government to the liabilities of a private person. The substantive standard for maritime cases is unquestionably the general maritime law subject only to specific regulations of the Canal Zone.
>
> *       *       *       *       *       *
>
> Indeed reading § 293 ... one might conclude that it came right out of a hornbook on admiralty.

*Id.* at 570.

The goal of § 293 was then summed up:

> ■ Except for these very insignificant little items, what § 293 seeks to achieve is what the maritime law seeks to achieve. The principle is broadly symbolized—*restitutio in integrum*.
>
> *       *       *       *       *       *
>
> And broadly translated and broadly applied it means to make good the total losses suffered by the shipowner for the casualty inflicted by the fault of another. Such losses are not confined to out-of-pocket expenses such as repair bills. They include the loss of the use of the vessel. With this approach the peculiar words of § 293 are not to be given a construction which ignores the goal of making the victim whole.

*Id.*

Consistent with *Gulfspray III* what M/V STRAAT HONG KONG seeks here are damages sustained by her as a direct result of the gross fault of the Canal Company and which are, moreover, the sort of damages traditionally allowed by the admiralty whether by notions of indemnity, set-off or otherwise. A ready illustration is the handling of damage claims in a mutual fault collision. The non-carrying vessel, compelled to pay 100% of the loss sustained by cargo on the carrying vessel, includes this payment in her damage claim before striking the balance. So too would be payments made by one vessel for judgments (or established prudent fair settlements) of claims for death of personal injury asserted by crew members (or heirs) of the other ship. The same would go for damage to property of third parties such as damage to piers or bridges (especially under circumstances where, because of compulsory pilotage the property owner would have, and could assert, no claim against the offending vessel). The same principles work with respect to sole fault situations. The maritime approach is to make the victim whole for all losses sustained or incurred caused directly by the fault of the tortfeasor. That is precisely what § 293(4) does.[1]

---

1. *See also Mathiesen v. Panama Canal Co.*, 551 F.2d 954, 1977 A.M.C. 981 (5th Cir. 1977), in which the Fifth Circuit, while not specifically citing § 293, found damages of the type sought by STRAAT HONG KONG in this case to be recoverable.

As a final matter, we reject any notion that the availability of sovereign immunity to the Canal Company has somehow been resurrected in sweeping fashion.[2] The Fifth Circuit very recently recognized the broad waiver of immunity in *Aparicio v. Swan Lake*, 643 F.2d 1109, 1114, n. 8 (5th Cir. 1981) in which the Court stated:

> Although [the] waiver of sovereign immunity may be conditioned upon compliance with the claims procedure outlined in 2 C.Z.C. § 271 and §§ 291–97, the waiver of sovereign immunity is liberally construed and thus the statutory requirements are not strictly interpreted.

Under the circumstances of the present case, the Canal Company stands before the Court with its chest unprotected by the armor of sovereign immunity.

The Court directs a Final Judgment shall be entered in favor of Plaintiff in accordance with this Opinion.

---

**2.** In this regard, we reject the Canal Company's reliance on *Tsakos Shipping & Trading v. TA-BOGA*, 597 F.2d 66 (5th Cir. 1979), which did not cite or deal with *Gulfspray I* or *III*. As the Court found in *Tsakos*, the claimant which there sought recovery against the Canal Company had wholly failed to comply with § 297. Not only did the master of the vessel decline an investigation and lay no basis for a claim before the Company, but he also signed a waiver to that effect. Thus we find *Tsakos* inapplicable to the present controversy.