A. Remy Fransen, Jr., Wiedemann & Fransen, Chester C. Stetfelt, Jr., New Orleans, La., for plaintiff-appellant.

James F. Shuey, Patrick McShane, New Orleans, La., for Chotin Transp., Inc., Lemele, Kelleher, etc.

Thomas Lynn SMITH,
Plaintiff–Appellant,

v.

HARBOR TOWING & FLEETING, INC., Defendant,

Chotin Transportation Co., Inc.,
Defendant–Appellee.

No. 89–3762.

United States Court of Appeals,
Fifth Circuit.

Sept. 6, 1990.

Rehearing and Rehearing En Banc
Denied Oct. 12, 1990.

Before THORNBERRY, GEE, and SMITH, Circuit Judges.

THORNBERRY, Circuit Judge:

This appeal raises the sole issue of whether a Jones Act seaman who is injured while performing seaman's work aboard a nonemploying shipowner's vessel can sue the shipowner for unseaworthiness as a *Sieracki* seaman. We hold that a Jones Act seaman cannot assert a *Sieracki* unseaworthiness cause of action against a vessel on which he is not a crew member.

Facts and Procedural History

At the time of his injury, plaintiff Thomas Lynn Smith (Smith) was a deckhand and crew member aboard the M/V TODD G, a tug owned and operated by his employer, Harbor Towing and Fleeting, Inc. (Harbor Towing). Harbor Towing supplied tugs and fleeting facilities to shift and fleet various barges, including barges owned by Chotin Transportation, Inc. (Chotin).

On September 11, 1988, the M/V TODD G was preparing to push two fuel barges owned by Chotin to another fleeting facility. The captain of the M/V TODD G ordered Smith to board the barges and rig them together for towing. Smith claims that in order to rig the barges together, it was necessary to straighten a tangled wire cable attached to a barge winch. While he was trying to untangle the kinked wire, Smith allegedly injured his arm and back when he slipped on some diesel oil on the deck of one of the barges.

The two Chotin barges, the CH–2084 and CH–1882, were nonpropelled barges that could be navigated only with the aid of tugs or towboats. Apart from Smith, they were unmanned at the time of the accident and Chotin states that they have never had a crew. Chotin also claims that both barges had been inspected by the Coast Guard and received their biannual Certificates of Inspection on September 9, 1988.

Smith sued Harbor Towing under the Jones Act, 46 U.S.C.App. § 688, and the general maritime law, seeking $5.25 million in actual and punitive damages. He also asserted a claim against Chotin for general maritime negligence and for breaching the warranty of seaworthiness. Smith claims that the presence of diesel oil on the deck and the kinked winch wire rendered the Chotin barges unseaworthy. Harbor Towing filed a cross-claim against Chotin seeking indemnity and contribution for any amounts for which it may be liable, claiming that any damages were caused by Chotin's fault, negligence, and by the unseaworthiness of Chotin's barges.

The district court concluded as a matter of law that because Smith was not a crew member as to either of Chotin's barges, Smith was owed no duty of seaworthiness. Accordingly, it granted Chotin's motion for partial summary judgment. After the district court entered a final judgment pursuant to Fed.R.Civ.P. 54(b), Smith brought this appeal.

### Discussion

The parties agree that Smith was a seaman with respect to his employer's tug, the M/V TODD G. There is also no doubt that the Chotin barges are vessels. But due to the transitory nature of his work aboard these barges, Smith concedes that he does not qualify as a Jones Act seaman on Chotin's barges. *See Offshore Co. v. Robison,* 266 F.2d 769, 779 (5th Cir.1959) (requiring, among other things, that the maritime worker be permanently assigned to a vessel or perform a substantial part of his work on a vessel). Smith argues, however, that Chotin owed him a duty of seaworthi-

ness on the grounds that he qualifies as a *"Sieracki* seaman."

In *Seas Shipping v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), the Supreme Court rejected the notion that the vessel owner's duty to furnish a seaworthy vessel extended only to those maritime workers employed by the vessel owner. *Id.* at 90–94, 66 S.Ct. at 875–77. The Court extended a cause of action for unseaworthiness to a longshoreman "doing a seaman's work and incurring a seaman's hazards." *Id.* at 99, 66 S.Ct. at 880. Subsequently, the Court recognized that an implied warranty of workmanlike performance ran from the stevedore by contract to the shipowner. Thus, the shipowner was entitled to full indemnity if the plaintiff's employer breached this implied warranty. *See Ryan Stevedoring Co. v. Pan–Atlantic S.S. Corp.,* 350 U.S. 124, 133, 76 S.Ct. 232, 237, 100 L.Ed. 133 (1956). The result of these holdings was to expose a stevedore to liability even though section 905 of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA) expressly limited the employer's liability to worker's compensation. *See* 33 U.S.C. § 905(a).

In 1972 Congress amended the LHWCA to add section 905(b), which provides that any "person covered" under the Act may no longer bring an action against a third-party vessel owner "based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred." 33 U.S.C. § 905(b). Thus, Congress abolished the *Sieracki* unseaworthiness cause of action and the *Ryan* indemnity action for those employees covered by the LHWCA. *See Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 260, 99 S.Ct. 2753, 2757, 61 L.Ed.2d 521 (1979).

Following the 1972 amendments, courts were faced with the question of whether *Sieracki* still survived with respect to those maritime workers not covered by the LHWCA. Some courts have reached the conclusion that the 1972 amendments completely abolished the *Sieracki* seaworthiness action.[1] In *Aparicio v. Swan Lake,*

---

1. *See, e.g., Normile v. Maritime Co. of the Philip-*      *pines,* 643 F.2d 1380, 1382 (9th Cir.1981); *United*

643 F.2d 1109 (5th Cir. Unit A Apr.1981), however, this court reached a less sweeping conclusion. Aparicio, a harbor worker employed by the Panama Canal Company, was injured while handling the lines of a vessel in the Canal Zone. As a federal employee working in the Canal Zone and covered by the Federal Employees' Compensation Act (FECA), 5 U.S.C. §§ 8101–93, Aparicio was not covered by the LHWCA. In *Aparicio*, we concluded that maritime workers covered by FECA, but who were not covered by the LHWCA, were not barred by the 1972 amendments from asserting claims as a *Sieracki* seaman. *Id.* at 1116–18. Because Aparicio was a longshoreman engaged in the classic seaman's work of handling the lines of a vessel, we held that he was entitled to an action for unseaworthiness under *Sieracki. Id.* at 1114 & n. 7. Two years later, in *Cormier v. Oceanic Contractors, Inc.*, 696 F.2d 1112, 1113 (5th Cir.1983), *cert. denied,* 464 U.S. 821, 104 S.Ct. 85, 78 L.Ed.2d 94 (1983), this court applied *Aparicio* and held that a welder working aboard a vessel in a foreign country, and thus beyond the reach of the LHWCA, was entitled to *Sieracki* seaman status.

Smith would have this court extend the holdings of *Aparicio* and *Cormier* to Jones Act seamen. It is true that as "a member of the crew of any vessel," Smith is excluded from LHWCA coverage. 33 U.S.C. § 902(3)(G). Thus, as a "maritime worker[] not covered by the LHWCA," Smith would arguably be entitled to a *Sieracki* remedy. *Aparicio,* 643 F.2d at 1118. This court, however, has refused to extend the special protections of *Sieracki* seaman status to Jones Act seamen injured on vessels on which they are not crew members. In *Bridges v. Penrod Drilling Co.*, 740 F.2d 361 (5th Cir.1984), plaintiff Bridges was a seaman by virtue of his assignment as a roustabout aboard his employer's drilling barge, the PENROD 72. He was ordered to board and unload a third-party supply vessel, the THOMAS DRAYTON, and was injured when a runaway drum on the deck crushed him. Bridges asserted an unseaworthiness cause of action against the owner of the supply vessel. The court rejected his claim and held that a seaman injured while performing the duties of a longshoreman, in a setting not subject to the LHWCA, was not a *Sieracki* seaman. *Id.* at 364.

The court explained that unlike the plaintiffs in *Aparicio* and *Cormier*, who were not Jones Act seamen, there was no need for Bridges to leave his regular seaman status and join the pockets of *Sieracki* seamen:

> As a member of the crew of the special purpose vessel PENROD 72, Bridges was possessed of the full range of traditional seaman's rights and remedies: maintenance and cure and a Jones Act negligence claim against his employer as employer, an unseaworthiness, strict liability claim against his employer as vessel owner for any injury on the PENROD 72, and a negligence claim in maritime tort for Offshore's breach of duty of reasonable care under the circumstances. In order to achieve adequate protection it was not necessary that Bridges be characterized as a remnant *Sieracki* seaman of the THOMAS DRAYTON. It cannot be said that Bridges was either "covered by no compensation act or by a compensation scheme that is far more stringent in its benefits than is the LHWCA." *Aparicio,* 643 F.2d at 1118 n. 17.... One with seaman status does not become additionally a *Sieracki* seaman by doing stevedoring work which might be styled traditional seaman's duties.

*Id.; see also Book v. Nordrill, Inc.*, 826 F.2d 1457, 1463 (5th Cir.1987) (holding that roustabout could not assert an unseaworthiness action against owner of vessel because he was not assigned to the vessel or a member of its crew).

We believe that *Bridges* controls this case. Like the plaintiff in *Bridges*, Smith has a variety of possible remedies as a Jones Act seaman: maintenance and cure

*States Lines, Inc. v. United States,* 593 F.2d 570, 572 (4th Cir.1979); *Grice v. A/S J. Ludwig Mowinckels,* 477 F.Supp. 365, 371 (S.D.Ala.1979).

and a Jones Act negligence claim against his employer as employer, an unseaworthiness claim against his employer as vessel owner for any injury on the M/V TODD G, and a negligence claim in maritime tort for Chotin's breach of duty of reasonable care under the circumstances. *Bridges,* 740 F.2d at 364. Thus, there is no need for him to join the pocket of *Sieracki* seamen.

## Conclusion

In summary, we hold that a Jones Act seaman, who possesses the full range of traditional seamen's rights and remedies, cannot maintain a *Sieracki* seaworthiness action against a vessel on which he is not a crew member. In reaching this conclusion, we are not unmindful of the fact that longshoremen performing a seaman's task on a nonemployer's vessel are entitled to an unseaworthiness remedy while seamen performing the same task are not. Although this court may wish to reexamine this issue en banc, until then the holding in *Bridges* controls this case. Thus, we hold that Smith may not assert a *Sieracki* unseaworthiness claim against Chotin, and the judgment of the district court is hereby

AFFIRMED.