**Rickie P. BERGERON, et al.**

v.

**ATLANTIC PACIFIC MARINE, et al.**

**Civ. A. No. 91–2019.**

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Sept. 29, 1993.

Keitha A. Leonard, Leonard & Leonard, Lafayette, LA, for Rickie P. Bergeron, Joann Bergeron, Jessie Bergeron, Robert Bergeron, Dessie Bergeron, Elizabeth Bergeron.

Edward O. Taulbee, IV, Taulbee Rowe Bares & Oliver, Lafayette, LA, for Atlantic Pacific Marine, Chevron Oil Co.

Dennis Stevens, Gibbens & Blackwell, New Iberia, LA, for Greig Filters, Inc., Travelers Insurance Co.

## MEMORANDUM RULING

DOHERTY, District Judge.

This matter comes before the Court as a motion for partial summary judgment filed on behalf of defendant, Chevron, seeking to preclude plaintiff's "*Sieracki*" unseaworthiness claim as plaintiff satisfies the "situs" and "status" test for coverage under the Longshore & Harbor Workers' Compensation Act (LHWCA) and is therefore precluded from maintaining an action based upon the unseaworthiness of the vessel Ranger V. Also pending before the Court is a motion styled as a partial summary judgment filed on behalf of plaintiff seeking to establish that he has a claim for punitive damages and that his wife, Mrs. Bergeron, also has a claim for loss of consortium.

At the initial pre-trial conference in this matter it came to the Court's attention that in the original complaint, plaintiff asserted that jurisdiction existed under general maritime law and/or diversity of citizenship and that plaintiff was also asserting a claim under the Jones Act, 46 U.S.C.App. § 688 and/or the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333, including a claim for punitive damages and a claim by Mrs. Bergeron for loss of consortium and that defendants contested these assertions. The Court asked counsel to submit briefs on the issue of jurisdiction and applicable law, wherein defendants argued that the facts in this matter clearly indicated that plaintiff had no claim pursuant to the Jones Act, the Outer Continental Shelf Lands Act or for punitive damages and that plaintiff's wife had no claim for loss of consortium. Subsequent submissions to the Court on these issues have now resolved a portion of these difficulties as the parties have *agreed* that the alleged accident took place in state territorial waters rather than on the Outer Continental Shelf, therefore, the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333 does not apply in this case. Further, plaintiff states in his brief to the Court that he is no longer making a claim under the Jones Act, 46 U.S.C.App. § 688, as plaintiff, Rickie Bergeron, was not a Jones Act seaman at the time of the accident. However, plaintiff is making a claim for unseaworthiness based on *Seas Shipping Co., Inc. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) and included under plaintiff's *Sieracki* general maritime claim is made a claim for punitive damages and a claim for loss of consortium asserted by Mrs. Bergeron, plaintiff's wife.

Defendants, Chevron and APMC, argue that plaintiff does not have a *Sieracki* claim, his wife does not have a claim for loss of consortium and/or neither has a claim for punitive damages, rather plaintiff's only claims against Chevron U.S.A., Inc. and Atlantic Pacific Marine are those under general maritime negligence as defendants argued was modified by *Miles v. Apex Marine,* 498

U.S. 19, 31, 111 S.Ct. 317, 325, 112 L.Ed.2d 275 (1990). Defendants assert plaintiff is precluded from asserting a *"Sieracki"* type action based on unseaworthiness of the "Ranger V", as plaintiff satisfies the situs and status test of the LHWCA. Therefore, plaintiff's only action against the vessel, the "Ranger V", is a negligence action under § 905(b) of the LHWCA. Further, defendants argue coverage under the LHWCA precludes plaintiff from maintaining a claim for punitive damages, as well as restricting the availability of a loss of consortium claim.

This Court finds weakness with defendants' analysis as the U.S. Department of Labor Office of Workers' Compensation Programs ("The Department"), in a letter dated July 31, 1992, denied plaintiff's claim for LHWCA benefits by stating that "[T]he January 24, 1991 injury sustained by Mr. Bergeron did not occur on a covered maritime situs necessary to establish jurisdiction pursuant to the Longshore & Harbor Workers' Compensation Act. *See Herb's Welding v. Gray,* [470] U.S. [414], 105 S.Ct. 1421, [84 L.Ed.2d 406] 17BRBS 78 (CRT) 1985." This leaves this Court with the unenviable question of whether this court is bound by the determination of the Department denying the plaintiff benefits under the LHWCA and if so, if plaintiff is not covered by the LHWCA does plaintiff have a *"Sieracki"* remedy and if plaintiff does have a *"Sieracki"* claim for unseaworthiness of the "Ranger V", what claims are allowed under that unseaworthiness claim, i.e., does plaintiff have a claim for punitive damages and his wife a claim for loss of consortium under the general maritime law claim made within state waters and/or the unseaworthiness claim notwithstanding *Miles* and its progeny?

### Facts

Plaintiff, Rickie Bergeron, was allegedly injured while on board the Atlantic Pacific Marine jack-up vessel, the "Ranger V", which was time chartered to Chevron, U.S.A., Inc. and performing workover operations in state waters. Atlantic Pacific Marine Corp. (APMC) and plaintiff's employer, Greig Filters, were allegedly independent contractors of Chevron. Plaintiff was alleg-

edly injured when, it is argued by plaintiff, he was instructed to place his filtering equipment in an unsafe manner which exposed him to an unsafe condition whereupon he allegedly fell and twisted his knee as a result of the allegedly hazardous placement of his equipment.

As stated previously, the Department found plaintiff did not meet the requirements for maritime *situs* necessary for benefits under the LHWCA. Plaintiff is presently receiving state workers' compensation. The Court questions the accuracy of the determination of the Department in stating that plaintiff has no *situs*. The "Ranger V" on which plaintiff alleges injury was a vessel located on navigable state waters. The Fifth Circuit in *Fontenot v. AWI, Inc.,* 923 F.2d 1127, 1130–1131 (5th Cir.1991), specifically cites *Herb's Welding v. Gray, supra* and states that "[O]ffshore oil rigs are of two (2) general sorts: fixed and floating. Floating structures have been treated as vessels by the lower courts. Workers on them, unlike workers on fixed platforms, enjoy the same remedies as workers on ships. If permanently attached to the vessel as crew members, they are regarded as seaman; if not, they are covered by the LHWCA because they are employed upon navigable waters." Therefore, even if we were to assume that the plaintiff was not permanently attached for these purposes, it would appear to this Court that as defendants argue there is a strong argument plaintiff should be accorded the benefits of LHWCA, assuming all other requirements being met, as his alleged injury occurred on a vessel on navigable waters.

■ Noting this argument, defendants urge this Court to find that plaintiff *is* covered by the LHWCA despite the ruling of the Department. The question, however, remains whether this Court is bound by the ruling of the Department in denying plaintiff LHWCA status. The answer would *appear* to be yes, that this Court is bound, again citing the Fifth Circuit in *Fontenot, supra* which quotes the United States Supreme Court in *Simms v. Valley Line Co.,* 709 F.2d 409, 411 (5th Cir.1983):

Permitting a trial court to redetermine issues decided by the administrative sys-

tem affectively defeats the purpose of the LHWCA.... furthermore, if we permit a trial court and the Department to reach inconsistent determinations of the coverage issue, an injured worker may receive both a jury trial and an LHWCA remedy or neither, despite the intention of Congress that he receive one or the other.

This Court recognizes that the cases standing for prohibitions against re-determination of Department decisions involve cases where the plaintiff was declared *eligible* for LHWCA benefits, but was seeking to recover as a seaman or as in *Fontenot*, where the plaintiff had settled his claim via the LHWCA. These plaintiffs were *extended* LHWCA benefits and perhaps that distinction should govern, but neither this Court nor either party was able to cite jurisprudence which involved a plaintiff being *denied* the benefits of the LHWCA possibly in error, and how this situation differed from the rationale of *Fontenot* and *Simms* and how such a situation was to be resolved by the district court. Therefore, unfortunately, this Court is left with little guidance beyond the language cited above.

The record does not reflect that the Department ruling has been appealed within the Department, therefore it appears that the Department determination of plaintiff's status is final as within the Department. If this Court is bound by the language in *Fontenot, supra* and therefore, by the Department's ruling this Court must proceed from the premise that the LHWCA does not apply to Mr. Bergeron. Although the inequities of this situation are apparent and unfortunate this Court feels it is bound by the language of *Fontenot* unless the Fifth Circuit grants further guidance. Therefore, without further guidance, this Court will consider itself bound by *Fontenot, supra.*

Therefore, if the LHWCA does not apply, does the abolition of the *Sieracki* seaman doctrine forged through the amendments to the LHWCA also not apply? Arguably, it should not as those outside the Act were not involved in the balance struck as stated in *Fontenot, supra* citing *Morrison–Knudsen Constr. Co. v. Director, Office of Workers'*

*Compensation,* 461 U.S. 624, 636, 103 S.Ct. 2045, 2052, 76 L.Ed.2d 194 (1983):

The [LHWCA] is not a simple remedial statute intended for the benefit of the workers. Rather, it was designed to strike a balance between the concerns of the longshoreman and harbor workers on one hand, and the employers on the other. Employers relinquish their defense to tort actions in exchange for limited and predictable liability. Employees accept the limited recovery because they receive proper relief without the expenses, uncertainty and delay that tort actions entail.

Further, this Court notes that plaintiff is not suing his employer, Greig Filters. This again argues that the prohibition of unseaworthiness and the *Sieracki* seaman doctrine created by the 1972 amendments to the LHWCA and 905(b) might not apply in this matter as that compromise was based on the accommodation between employers and their employees, under the LHWCA.

It is clear that the Fifth Circuit has adopted the position that the 1972 amendments to the LHWCA did not completely abolish *Sieracki* relief for "seamen" not covered by the LHWCA. *See Aparicio v. Swan Lake,* 643 F.2d 1109 (5th Cir.1981) and *Smith v. Harbor Towing & Fleeting, Inc.,* 910 F.2d 312 (5th Cir.1990). Further, the Fifth Circuit in *Cormier v. Oceanic Contractors, Inc.,* 696 F.2d 1112 (5th Cir.1983), re-affirmed the *Sieracki* seaman status was still available to those employees who are not under the reach of LHWCA because they are working in a foreign country. Therefore, arguably, the *Sieracki* seaman still lives, the question remains, however, under what circumstances and whether this case is such a circumstance.

It appears this Court must accept that plaintiff does not have the benefits of LHWCA coverage given the determination by the Department. If this Court is unable to make a different determination, different from the Department, then it would appear plaintiff is not covered under LHWCA. As plaintiff is not covered by the LHWCA the cases argue plaintiff's *Sieracki* seaman claim was not killed as to him by the LHWCA amendments. Therefore, it appears plaintiff retains his right to a *Sieracki* seaman claim

of unseaworthiness under the general maritime law.

As this Court finds an exception to the demise of *Sieracki* seaman in this case, the Court must then determine if the plaintiff meets the standard of a *Sieracki* seaman, i.e., whether he is doing a traditional seaman's work and incurring a seaman's hazard.

In *Coats v. Penrod Drilling Corp.,* 785 F.Supp. 614 (S.D.Miss.1992), the Mississippi court allowed *Sieracki* seaman status, as it was convinced that plaintiff made a prima facia case for unseaworthiness, as a *Sieracki* seaman, even though he was, at the time of his alleged injury, performing traditional oil and gas related activities in Dubai. The *Coats* court cites *Rogers v. United States,* 452 F.2d 1149, 1151 (5th Cir.1972) (citations omitted) for the established law to the effect that "[T]he warranty of seaworthiness may extend to shore based repair workers." *Rogers* provides this does not apply if the vessel is not in navigation, but clearly in this matter the "Ranger V" was in navigation at the time of plaintiff's alleged injury.

The Fifth Circuit opinion in *Smith v. Harbor Towing & Fleeting, Inc.,* 910 F.2d 312 (5th Cir.1990) may also have application in this case. In 1990—well after the amendments to the LHWCA—*Smith* held that a Jones Act seaman cannot assert a *Sieracki* seaworthiness cause of action against a vessel when he is not a member of the crew of that vessel. In *Smith,* clearly the Fifth Circuit acknowledged the *Sieracki* claim, but did not allow a Jones Act plaintiff to raise it under those facts. As plaintiff is not a Jones Act seaman and therefore does not have the remedies of a Jones Act seaman, this Court presumes *Smith* would not control and plaintiff would not have to be a member of the crew of the "Ranger V" in order to assert his *"Sieracki"* claim. To hold otherwise, i.e., to require a *Sieracki* seaman to be *assigned* to a vessel before he could make an unseaworthiness claim against the vessel would have the practical effect of removing the unsea-

worthiness claim from those *Sieracki* seaman who by definition are not assigned to the vessel but incurring a seaman's hazard and doing a traditional seaman's work.

■ Therefore, this Court finds that based on the ruling of the Department and the language in *Fontenot, supra,* this Court does not have the authority to re-litigate the issue of plaintiff's status for benefits under the LHWCA. As this issue stands, the plaintiff does not have the remedies afforded under LHWCA and is not suing his employer under the Act, therefore, based on the history of the demise of "The *Sieracki* Seaman" via the 1972 amendments to the LHWCA and the Fifth Circuit holdings that "*Sieracki* Seaman" remedy lives, this Court finds that the plaintiff has made at least a prima facie case for a "*Sieracki* Seaman" remedy of unseaworthiness against the owner or owners of the vessel and that the facts provide a "*Sieracki* pocket" to the plaintiff. Therefore, plaintiff has a claim under the general maritime law for unseaworthiness against the owner of the vessel.

If plaintiff has a general maritime law claim for unseaworthiness without concurrent application of the Jones Act and/or Death on the High Seas Act ("DOHSA"), does plaintiff retain a claim for punitive damages and Mrs. Bergeron a claim for loss of consortium in light of *Miles* and its progeny?

■ This Court finds that the question has yet to be settled whether plaintiff has a claim for recovery of punitive damages made under general maritime law, absent the Jones Act or DOHSA. Plaintiff's claim is not a claim by a Jones Act seaman, rather is a general maritime law claim for unseaworthiness. Therefore, at this juncture, it is not settled, whether plaintiff under those facts may continue to pursue his claim for punitive damages. Arguably, the rationale of *Miles* and its progeny is that of deference to Congressional edicts and the overall need for uniformity[1] in the law; therefore, arguably this

---

1. "The constitutionally based principle that federal admiralty law should be 'a system of law coextensive with, and operating uniformly in, the whole country.' ... In this era, an admiralty court should look primarily to these legislative

enactments for policy guidance. We may supplement these statutory remedies where doing so would achieve the uniform vindication of such policies consistent with our constitutional mandate, but we must also keep strictly within the

underlying rationale precludes plaintiff's claim for punitive damages. However, the existing case of *Complaint of Merry Shipping, Inc.*, 650 F.2d 622 (5th Cir.1981) gives this Court reason for pause and as this Court has found no United States Supreme Court case specifically holding punitive damages are available under the general maritime law, this Court ponders the degree to which *Miles* overturned *Merry Shipping*. Also, although *Miles* addresses *non-pecuniary* damages and their availability under the general maritime law to a Jones Act seaman and/or one making a claim under DOHSA, punitive damages arguably *were not* at *issue* for decision before the Supreme Court in *Miles*.[2] However, notwithstanding the underlying rationale of uniformity under the law,[3] given the express language of *Miles*[4] and the most recent actions of the Fifth Circuit,[5] this Court feels that, without further guidance from a higher court, this Court now feels plaintiff's claim for punitive damages is not precluded.[6]

Plaintiff's wife, Mrs. Bergeron, has also made a claim for loss of consortium. This Court in previous memoranda rulings has

ruled that there is no claim for loss of consortium under general maritime law.[7] This Court notes that, the *Miles* court specifically found the holding of *Sea–Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), allowing certain claims and/or damages, applied only in territorial waters and only to longshoremen and did not consider "the preclusive effect of the Jones Act for deaths of a true seaman." *Miles*, 498 U.S. at 31, 111 S.Ct. at 325, 112 L.Ed.2d at 290. However, the *Miles* court in a footnote pointed out that the 1972 amendments to the LHWCA have rendered *Gaudet* inapplicable *on its facts*. *Miles*, 498 U.S. at 30–31 fn. 1, 111 S.Ct. at 325 fn. 1, 112 L.Ed.2d at 289 fn. 1. Further, the *Miles* court states in discussion of *Gaudet* and Congress' enactment of DOHSA states "This explicit limitation [within DOHSA] forecloses recovery of non-pecuniary loss, such as loss of society, in a general maritime action." *Miles, supra* at 31, 111 S.Ct. at 325, 112 L.Ed.2d at 290. Therefore, the *Miles* Court's specific intent as to claims for non-pecuniary damages in a pure general maritime law claim is not clear.

limits imposed by Congress." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 27, 111 S.Ct. 317, 323, 112 L.Ed.2d 275. *See also Murray v. Anthony J. Bertucci Const. Co.*, 958 F.2d 127 (5th Cir.1992) at 131 and *Walker v. Braus*, 995 F.2d 77 (5th Cir. July 14, 1993) at 81–82.

**2.** *Miles v. Apex Marine Corp.*, 498 U.S. 19 at 22, 111 S.Ct. 317 at 320, 112 L.Ed.2d 275 at 284, (1990), "At trial, the district court granted Apex's motion to strike the claim for punitive damages, ruled that the estate could not recover Torregano's lost future income, and denied Miles' motion for a directed verdict as to negligence and unseaworthiness." The Supreme Court's summary of the appellate court action makes no mention of the punitive damage issue. The Supreme Court does not specifically reference punitive damages again in its text; however, it does reference "non-pecuniary damages."

**3.** *See* fn. 1, *supra*.

**4.** *See* fn. 3.

**5.** The Fifth Circuit Court of Appeals on August 17, 1993 withdrew *Nichols v. Petroleum Helicopters, Inc.*, Slip Op. No. 92–5133 (5th Cir. July 14, 1993) and the Fifth Circuit instructed the clerk to with draw the mandate issued in *Nichols* and classified the case as III for further consideration by an oral argument panel. A more complete

explanation of this issue is found in this Court's discussion of the loss of consortium claim following.

**6.** *Miles, supra* was a Jones Act case coupled with a general maritime law claim—a fact repeatedly eluded to by the Court "Because this case involves the death of a seaman, we must look to the Jones Act.... Because Torregano's estate cannot recover for his lost future income under the Jones Act, it cannot do so under general maritime law." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) Further, in dicta the court notes "This explicit limitation [under DOHSA] foreclosed recovery for non-pecuniary loss, such as loss of society, in a general maritime action." *Id.* Thus, the Court repeatedly noted the general maritime law claim was coupled with either the Jones Act or DOHSA, i.e., a Congressional "limitation" on "non-pecuniary" damages.

**7.** This Court also notes the Fifth Circuit *had* held in *Nichols v. Petroleum Helicopters, Inc.*, Slip Op. No. 92–5133 at 5287 (5th Cir. July 14, 1993) "The Millers appeal the court's awards, the findings of fact upon which they were based, and its holding that loss of consortium was not cognizable under general maritime law. This Court affirms." *Nichols v. Petroleum Helicopters, Inc.*, Slip Op. No. 92–5133 (5th Cir. July 14, 1993) was withdrawn and scheduled for oral argument.

Although issue remained, this Court had been guided by the additional decisions of the Fifth Circuit Court of Appeals which have noted with approval that *Miles, supra* had limited *Gaudet, supra* to its facts. *Michel v. Total Transportation, Inc.,* 957 F.2d 186 (5th Cir.1992) and *Murray v. Anthony J. Bertucci Construction Co.,* 958 F.2d 127 (5th Cir. 1992).

This Court was particularly persuaded by the language in *Murray, supra* which states,

> *Miles* makes it clear that the widow of a *seaman* cannot recover loss of society whether the death occurs in territorial waters or on the high seas. The same result must follow in injury cases.... The Supreme Court's emphasis in *Miles* on *the importance of uniformity and remedies in maritime death cases must apply equally to injury actions* ... therefore, we follow the Supreme Court's lead in *Miles* and hold that a spouse of a injured seaman has no cause of action for loss of society under the general maritime law. [emphasis added] *Miles,* 498 U.S. at 33, 111 S.Ct. at 326, 112 L.Ed.2d at 291.

■ However, since this Court's initial inquiry into this question, the Fifth Circuit has addressed the question of the application of *Miles* in the general maritime law arena in two recent cases which add flavor to the inquiry. Although this Court recognizes that Mr. Bergeron is *not* a Jones Act seaman, but may in fact be a *"Sieracki"* seaman, again, the dicta of *Miles* and *Murray,* and also the more recent case of *Walker v. Braus,* 995 F.2d 77 (5th Cir. July 14, 1993)[8] and *Nichols v. Petroleum Helicopter, Inc.,* Slip Op. No. 92–5133 at 5287 (5th Cir. July 14, 1993)[9] concerning uniformity in the maritime law, argued for this Court to find plaintiff's wife's claim for loss of consortium is precluded. However, this Court has revised this portion of the preliminary draft multiple times in response to the evolving pronouncements on the question of the availability of a loss of

consortium and/or non-pecuniary damages which have been presented by the Fifth Circuit, *See Walker v. Braus,* 995 F.2d 77 (5th Cir.1993) and *Nichols, supra.* Opinion withdrawn by the Fifth Circuit in opinion dated August 17, 1993, 995 F.2d 85; wherein the Fifth Circuit instructed the clerk to withdraw the mandate issued in *Nichols;* and classified the case for further consideration by an oral argument panel. Consequently, this Court is uncertain as to the Fifth Circuit's opinion as to the effect of *Miles* on non-pecuniary damages in the various applications of the law and/or what damages are to be considered as non-pecuniary. Therefore, this Court will allow Mrs. Bergeron to maintain her claim for loss of consortium.

This Court has before it questions, among others, of whether a claim for punitive damages and/or loss of consortium are available to a claimant and/or his wife, who is ostensibly a *Sieracki* seaman, and ostensibly sustains an injury while on a jack-up within state territorial waters when no claim is made or available under the Jones Act or Death on the High Seas Act. Therefore this Court feels these issues are ripe for a referral to the Fifth Circuit under 28 U.S.C. § 1292(b).

In light of the numerous controlling questions of law to which there are substantial grounds for difference of opinion, and as an immediate appeal from this order will materially advance the ultimate determination of this litigation pursuant to 28 U.S.C. § 1292(b), this Court invites the parties to appeal this matter to the United States Fifth Circuit Court of Appeal for a determination of this Court' authority to re-litigate the ruling denying plaintiff LHWCA benefits and further, the availability of the *"Sieracki* Seaman" remedy of unseaworthiness to a plaintiff in this legal posture, and the applicability of punitive damages and/or loss of consortium in a pure general maritime law claim brought by a *Sieracki* seaman injured within

---

**8.** "Allowing Trahan to recover loss of consortium damages would directly contradict the policy of uniformity emphasized and relied on by the Court in *Miles;* and with out expressly so deciding at this time, we acknowledge the strength of the argument that damages for loss of society

may no longer be permitted in a general maritime wrongful death action involving the operator of a fishing boat." *Walker v. Braus,* 995 F.2d 77 (5th Cir.1993) at 82.

**9.** *See* fn. 7, *supra.*

three (3) miles, i.e. within state territorial waters.

### ORDER

Considering the foregoing memorandum ruling;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that defendant's, Atlantic Pacific Marine, Inc.'s, motion for summary judgment seeking to dismiss plaintiff's "Sieracki" unseaworthiness claim is DENIED.

Plaintiff's, Rickie P. Bergeron's, motion, styled as a motion for partial summary judgment is hereby GRANTED, insofar as plaintiff, Rickie P. Bergeron, will be allowed to maintain his claim for punitive damages and plaintiff's wife, Mrs. Bergeron, will be allowed to maintain her claim for loss of consortium.