**In re TPT TRANSPORTATION.**
**Civil Action No. 95–215–B–M2.**

United States District Court,
M.D. Louisiana.

Dec. 13, 2001.

Hyde Dunbar Healy, Ashton, R. O'Dwyer, Jr., Lemle & Kelleher, Pan American Life Center, New Orleans, LA, for debtor.

Craig Frank Palmintier & Holthaus, John W. Degravelles, Michael Carter Palmintier, deGravelles, Palmintier & Holthaus, Scott Thomas Gegenheimer, Julie Malone Brown, Sweeney & Miller, LLC, Charles R. Moore, Moore, Walters, Shoenfelt & Thompson, Daniel Albert Claitor, Claitor & Loupe, John P. Wolff, III, Nancy B. Gilbert, Keogh, Cox & Wilson, Ltd., Vincent J. Desalvo, DeSalvo & Harris, Baton Rouge, LA, for claimants.

## RULING

POLOZOLA, Chief Judge.

This matter is before the Court on cross motions for summary judgment filed by

TPT Transportation Company ("TPT") and HBM River Plant, Inc. ("HBM"), a subsidiary of Hall–Buck Marine, Inc. ("Hall–Buck"). On September 29, 2001,[1] the Court, for reasons to be assigned in this opinion, granted HBM's motion for summary judgment[2] and denied TPT's motion for summary judgment.[3] The Court found that TPT was not entitled to recover attorney fees or payments made to settle the personal injury cases from HBM or Hall–Buck.[4] The Court now assigns reasons for its opinion.

## Facts

During the summer of 1994, TPT engaged the services of HBM to remove the residue of toluene cargo from a barge owned by TPT and to clean and gas-free the barge so that it could pass inspection by the United States Coast Guard and receive new cargo. On August 15, 1994, while the work was being performed by HBM's cleaning crew, an explosion occurred when a spark ignited the explosive vapors of the toluene cargo. The parties agree that the cause of the spark was most likely the crew's use of an ungrounded hose which was not designed for the removal of flammable cargo.

The explosion injured four of HBM's employees and also caused substantial damage to a barge owned by TPT. Subsequently, TPT filed this action seeking limitation of its liability to the injured workers. Thereafter, all four workers filed claims against TPT in the proceeding.

TPT also filed a third party complaint against HBM and Hall–Buck Marine seeking indemnity and contribution for the claims asserted by the workers and for its own damages occasioned by the loss of the barge. This case was administratively closed pending the resolution of the personal injury claims in state court.[5] The state court personal injury claims were settled before a judicial determination of the status of the claimants as seamen or longshoremen. TPT and HBM also settled the barge damage claim. The issues presently before the Court are TPT's indemnity claim for attorneys' fees incurred in defending the personal injury claims filed against it and those fees incurred in prosecuting its own barge damage claim. TPT also seeks indemnity for the sum it paid in settlement to the injured workers.[6]

## Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[7] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[8] A party moving for sum-

---

1. Rec. Doc. No. 322.

2. Rec. Doc. No. 292.

3. Rec. Doc. No. 288.

4. Rec. Doc. No. 322.

5. Rec. Doc. No. 159.

6. TPT's motion for summary judgment did not raise the claim for indemnity; however, since TPT's counsel asserted the claim during

oral argument, the Court will address the claim.

7. Fed.R.Civ.P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir.1996).

8. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). See also *Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir.1995).

mary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." [9] If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." [10]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[11] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[12] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." [13] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." [14] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[15]

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." [16]

## Law

### I. Applicability of *Ryan* Indemnity

In assessing TPT's claim for indemnity, including attorneys' fees incurred in conjunction with the personal injury claims, both parties present arguments regarding the applicability of *Ryan Stevedoring Co., Inc. v. Pan–Atlantic Steamship Corp.*[17] HBM argues that the Longshore and Harbor Workers' Compensation Act [18] ("LHWCA") supercedes *Ryan* and precludes TPT's claim for indemnification. TPT asserts that the claimants are not covered under the LHWCA and, in the alternative, even if they are, *Ryan* still has some limited applicability.

In 1927, Congress adopted LHWCA, which was designed to be the exclusive remedy for a longshoreman bringing suit against his employer.[19] Despite the exclusivity provision in the LHWCA, the Supreme Court, in *Seas Shipping Co., Inc. v. Sieracki,*[20] allowed a longshoreman to re-

**9.** *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (quoting *Celotex,* 477 U.S. at 323–25, 106 S.Ct. at 2552).

**10.** *Little,* 37 F.3d at 1075.

**11.** *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046–47 (5th Cir.1996).

**12.** *Little,* 37 F.3d at 1075; *Wallace,* 80 F.3d at 1047.

**13.** *Wallace,* 80 F.3d at 1048 (quoting *Little,* 37 F.3d at 1075). See also *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996).

**14.** *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir.1995).

**15.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

**16.** *Id.,* 477 U.S. at 248, 106 S.Ct. at 2510.

**17.** 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

**18.** 33 U.S.C. §§ 901–950.

**19.** Grant Gilmore and Charles L. Black, Jr., The Law of Admiralty § 6–53 (2nd ed.1975).

**20.** 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, *rehearing denied,* 328 U.S. 878, 66 S.Ct. 1116, 90 L.Ed. 1646 (1946).

cover from a shipowner, who was not his employer, under the theory that the vessel was unseaworthy.[21] Later, in *Ryan Stevedoring Co., Inc. v. Pan–Atlantic Steamship Corp.*,[22] the Supreme Court extended the loophole in the LHWCA by allowing a shipowner who was liable to a longshoreman under *Sieracki* to recover from the longshoreman's employer by asserting an indemnity action.[23] The combined effect of the *Sieracki* and *Ryan* decisions diluted the LHWCA's exclusivity provision. A longshoreman seeking to recover damages could indirectly recover from his employer by suing the shipowner who, in turn, sought indemnity from the employer.

As a result of the *Sieracki* and *Ryan* decisions, Congress amended the LHWCA in 1972.[24] The 1972 amendments to the LHWCA added subsection (b) which states, in pertinent part:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly

and any agreements or warranties to the contrary shall be void.[25]

The amendment to section 905 of the LHWCA still allows a longshoreman to bring an action against a shipowner for negligence, but effectively overrules *Sieracki* and *Ryan* by eliminating the unseaworthiness doctrine which allowed an action against shipowners even in the absence of negligence.[26]

The amendments to the LHWCA requires the Court to determine what applicability, if any, *Ryan* continues to have for several reasons.[27] First, *Ryan* recognized the warranty of workmanlike performance ("WWLP") owed to the shipowner by stevedores and independent contractors and ruled that the breach of this warranty could constitute fault.[28] Second, *Ryan* held that a suit by the shipowner for breach of the implied WWLP was not barred by section 905.[29] Finally, *Ryan* allowed an indemnity action based on breach of the WWLP where a shipowner was found to be liable without fault in an unseaworthiness action.[30] In the aftermath of the 1972 amendments, courts continue to recognize the WWLP doctrine and hold that its breach can constitute fault. In addition, section 905(a) does not abolish the *Sieracki* and *Ryan* remedies for cer-

---

**21.** The theory was that the vessel owner owed a warranty of the seaworthiness of his vessel. The unseaworthiness cause of action created by Sieracki exposed vessel owners to what was essentially strict liability. *Id.*

**22.** 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

**23.** *Gilmore & Black, supra* note 19.

**24.** *Id.*

**25.** 33 U.S.C. § 905(b).

**26.** *Id.* See also *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979); *Cooper Steve-*

*doring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974); *Brock v. Coral Drilling, Inc.*, 477 F.2d 211 (5th Cir. 1973); *Ducrepont v. Baton Rouge Marine Enterprises, Inc.*, 666 F.Supp. 882 (E.D.La.1987), aff'd, 877 F.2d 393 (5th Cir.1989).

**27.** Marie R. Yeates, Phillip B. Dye, Jr. and Roland Garcia, Contribution and Indemnity in Maritime Litigation, 30 S. Tex. L.Rev. 215, 238 (1989).

**28.** *Id.*

**29.** *Id.*

**30.** *Id.*

tain workers who are not covered under the LHWCA.[31]

Because *Ryan* and *Sieracki* may still have some viability in the Fifth Circuit in certain cases where the LHWCA is rendered inapplicable,[32] a number of cases have held that the determination of whether or not a claimant is classified as a longshoreman or a seaman can be a material fact which would preclude entry of summary judgment.[33] Such is not the case under the facts of this case.

■ In order for TPT to be indemnified, it must show that: 1) the settlement was reasonable under the circumstances; 2) HBM breached the warranty of workmanlike performance and 3) because of the breach by HBM, TPT was exposed to potential liability.[34] The reasonableness of TPT's settlement with the claimants and their potential exposure to liability does not depend on the classification of the claimants as seamen or longshoremen. It

is immaterial whether the claimants are longshoremen or seamen because TPT owed no duty of seaworthiness under the facts of this case. Thus, TPT was not exposed to liability without fault.

Even if the Court finds that the claimants should be classified as longshoremen, Fifth Circuit jurisprudence has denied recovery by a longshoreman against a vessel owner under analogous facts.[35] TPT has alleged that the barge was under the exclusive control of HBM at the time of the explosion. Accordingly, section 905(b) provides for "the elimination of the warranty of seaworthiness [and] evinces congressional intent to curtail shipowner liability for conditions arising when the vessel is not within the owner's control and for injuries caused solely by independent contractors. Remaining is the maritime worker's right to sue for negligence only." [36] It is not necessary for TPT to absolutely show that it would

---

**31.** *Aparicio v. Swan Lake,* 643 F.2d 1109 (5th Cir.1981).

**32.** *Id.* See also *Cormier v. Oceanic Contractors, Inc.,* 696 F.2d 1112 (5th Cir.1983), *cert. denied,* 464 U.S. 821, 104 S.Ct. 85, 78 L.Ed.2d 94 (1983); *Burks v. American River Transp. Co.,* 679 F.2d 69 (5th Cir.1982). But see *Smith v. Harbor Towing & Fleeting, Inc.,* 910 F.2d 312 (5th Cir.1990), *cert. denied,* 499 U.S. 906, 111 S.Ct. 1107, 113 L.Ed.2d 216 (1991)(a Jones Act seaman cannot assert a Sieracki unseaworthiness cause of action against a vessel on which he is not a crewmember); *Bridges v. Penrod Drilling Co.,* 740 F.2d 361 (5th Cir.1984)(a seaman injured while performing the duties of a longshoreman, in a setting not subject to the LHWCA, is not a Sieracki seaman).

**33.** To date, there has been no judicial determination of the status of any of the claimants in this case. The parties agree that Landry and Reed are seamen; therefore, their status is not at issue. The status of Richardson and Payton, however, is more precarious. Although Richardson and Payton received benefits under the LHWCA, they both claimed to be seamen covered by the Jones Act in their

personal injury suit brought in state court. Despite the fact that Richardson and Payton received benefits under the LHWCA, each may still be classified as Jones Act seamen. *Southwest Marine, Inc. v. Gizoni,* 502 U.S. 81, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991); *Smith v. Service Contracting, Inc.,* 236 F.Supp. 492 (E.D.La.1964); *Robertson v. Donovan,* 219 F.Supp. 364 (E.D.La.1963).

**34.** *American Export Lines v. Norfolk Shipbuilding & Drydock Corp.,* 336 F.2d 525 (4th Cir.1964); *Damanti v. A/S Inger,* 314 F.2d 395 (2nd Cir.1963), *cert. denied,* 375 U.S. 834, 84 S.Ct. 46, 11 L.Ed.2d 64 (1963); *Paliaga v. Luckenbach S.S. Co.,* 301 F.2d 403 (2nd Cir. 1962); *Borm v. Cunard S.S. Co., Ltd.,* 367 F.Supp. 389 (S.D.Tex.1973); *Johnson v. Excelsior Shipping Co.,* 319 F.Supp. 986 (S.D.Ala.1970).

**35.** See *Hess v. Upper Mississippi Towing Corp.,* 559 F.2d 1030 (5th Cir.1977), *cert. denied,* 435 U.S. 924, 98 S.Ct. 1489, 55 L.Ed.2d 518 (1978).

**36.** *Id.* at 1032.

have been liable to the claimants. TPT must show that there was potential liability based on the law and the facts. TPT has vehemently denied any negligence on its part in connection with the explosion. In doing so, TPT is now precluded from showing it has any exposure for liability to any longshore claimants.

TPT also argues that the claimants should be properly classified as seamen, thus avoiding the exclusivity provision of the LHWCA. However, TPT must show an exposure to liability in order to recover attorney's fees under the vestiges of *Ryan*. In general, *Ryan* indemnity is only available to the shipowner when liability has been imposed based on the unseaworthiness of the vessel.[37] The Fifth Circuit and other courts have rejected *Ryan* and applied comparative fault principles instead.[38] The theories of negligence and unseaworthiness are distinguishable in that "negligence requires proof of fault, while unseaworthiness requires proof of a defective condition on the vessel."[39] Thus, even if the claimants escape the exclusivity bar of the LHWCA, the ability of TPT to successfully assert an indemnity action against HBM may depend on the basis of

its liability to all claimants. A careful review of the jurisprudence indicates that the *Ryan* theory of indemnity is only viable where a seaman's action against the vessel owner is based upon an unseaworthy condition created by an independent contractor.[40]

Assuming the claimants are seamen, the only viable cause of action against TPT is an action based on unseaworthiness. However, the Fifth Circuit does not allow a seaman to assert an unseaworthiness claim against a vessel on which he is not a member of the crew.[41] Therefore, *Ryan*, although still viable in certain unique situations, does not give TPT a right to the relief it seeks in this case.

It is clear that the Fifth Circuit has been reluctant to extend *Ryan* beyond its facts.[42] Thus, the applicability of *Ryan* indemnity is limited to the situation where a stevedore breaches a warranty of workmanlike performance implied in the contract between the vessel and the stevedore and the vessel owner is held liable even though it did not contribute to the unseaworthy condition of the vessel.[43] Otherwise, the general rules of proportionate fault apply.[44] No evidence has been pre-

---

**37.** George K. Fuiaxis, Indemnification or Comparative Fault: Should a Tortfeasor's Right to Receive "Ryan Indemnity" in Maritime Law Sink or Swim in the Presence of Comparative Fault, 67 Fordham L.Rev. 1609, 1635 (1999).

**38.** *Id.* at 1636. See *Rockwell Int'l. Corp. v. M/V Incotrans Spirit*, 998 F.2d 316 (5th Cir. 1993); *Hardy v. Gulf Oil Corp.*, 949 F.2d 826 (5th Cir.1992); *Bosnor, S.A. de C.V. v. Tug L.A. Barrios*, 796 F.2d 776 (5th Cir.1986); *Loose v. Offshore Navigation Inc.*, 670 F.2d 493 (5th Cir.1982); *Gator Marine Service Towing, Inc. v. J. Ray McDermott & Co.*, 651 F.2d 1096 (5th Cir.1981); *Agrico Chemical Co. v. M/V Ben W. Martin*, 664 F.2d 85 (5th Cir.1981).

**39.** *Fuiaxis, supra* note 37, at 1621. See also *Zielinski v. Companhia De Navegacao Maritima Netumar*, 460 F.Supp. 1179 (S.D.N.Y. 1978).

**40.** Gus A. Schill, Jr., Recent Developments Regarding Maritime Contribution and Indemnity, 51 La. L.Rev. 975 (1991).

**41.** See *In re River Transportation Assocs.*, 5 F.3d 97 (5th Cir.1993); *Smith v. Harbor Towing & Fleeting, Inc.*, 910 F.2d 312 (5th Cir. 1990), *cert. denied*, 499 U.S. 906, 111 S.Ct. 1107, 113 L.Ed.2d 216 (1991); *Bridges v. Penrod Drilling Co.*, 740 F.2d 361 (5th Cir.1984).

**42.** *Hardy v. Gulf Oil Corp.*, 949 F.2d 826 (5th Cir.1992). See also W. Robins Brice, Solidarity and Contribution in Maritime Claims, 55 La. L.Rev. 799 (1995).

**43.** *Id.*

**44.** *Schill, supra* note 40.

sented which would indicate any fault of TPT, nor has HBM presented any evidence repudiating TPT's suggestion that it breached the warranty of workmanlike performance.

Even though there has been no judicial determination of the status of the claimants, there is no issue of material fact which would preclude entry of summary judgment in favor of HBM on TPT's claim for indemnity for the amount paid in settlement, including attorneys' fees incurred in defense of the personal injury claims. Although the status inquiry is fact-sensitive and, as such, is generally a question for the fact-finder,[45] the status of the parties is not material to a determination of the issues in this case. Under the law and facts of this case, recovery is precluded irrespective of whether the claimants are longshoremen or seamen. Therefore, HBM's motion for summary judgment on the issue of indemnity for the amount paid in settlement and attorneys' fees on the personal injury claims is granted. TPT's motion for summary judgment on the same issue is denied.[46]

## II. Breach of the Warranty of Workmanlike Performance and the applicability of *Todd Shipyards*

In addition to seeking indemnity for the amount paid in settlement of the personal injury claims, including attorneys' fees, TPT also seeks indemnification for the attorneys' fees it incurred in prosecuting the barge damage claim against HBM. Specifically, TPT argues that *Todd Shipyards Corp. v. Turbine Service, Inc.*[47] entitles it to attorneys' fees and litigation expenses as damages for breach of the warranty of workmanlike performance. TPT's contentions raise two distinct issues: (1) the applicability of *Todd Shipyards;* and, (2) the alleged breach by HBM of the warranty of workmanlike performance.

Although the general rule of American law is that the parties should bear their own costs, including attorneys' fees, there are an increasing number of exceptions which allow parties to recover their fees.[48] In *Todd Shipyards*, the Fifth Circuit appeared to carve out one such exception. *Todd Shipyards* allowed a shipowner under the facts of that case to recover "foreseeable damages" for breach of the warranty of workmanlike performance including attorneys' fees and litigation expenses.[49] The Fifth Circuit, when deciding *Todd Shipyards*, relied heavily on a post–1972 case which granted *Ryan* indemnity, including attorneys' fees for the shipowner's defense of personal injury claims.[50] Subsequent cases have criticized the result reached by the Fifth Circuit in *Todd Shipyards*.[51] As noted by another

---

**45.** *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067 (5th Cir.1986).

**46.** The Court has considered all of the contentions of the parties whether specifically discussed herein or not.

**47.** 674 F.2d 401 (5th Cir.1982), cert. denied sub nom, *Sentry Ins. v. Todd Shipyards Corp.*, 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982).

**48.** David W. Robertson, Court–Awarded Attorneys' Fees in Maritime Cases: The "American Rule" in Admiralty, 27 J. Mar. L. & Com. 507 (1996).

**49.** *Todd Shipyards,* 674 F.2d at 415.

**50.** See *Strachan Shipping Co. v. Koninklyke Nederlandsche Stoomboot Maalschappy, N.V.*, 324 F.2d 746 (5th Cir.1963), *cert. denied*, 376 U.S. 954, 84 S.Ct. 969, 11 L.Ed.2d 972 (1964).

**51.** See, e.g., *Nathaniel Shipping, Inc. v. General Elec. Co.*, 920 F.2d 1256 (5th Cir.1991), *as modified on denial of rehearing*, 932 F.2d 366 (5th Cir.1991).

panel of the Fifth Circuit in *Nathaniel Shipping*, the *Todd Shipyards* court failed to draw a distinction between the recovery of fees for the defense of personal injury claims and the recovery of fees for pursuit of the shipowner's own claim for damages. Therefore, the Todd Shipyards court adopted the rule formulated in Strachan Shipping,[52] designed to allow the shipowner who was held to be liable without fault to recover his expenses from the true tortfeasor, and adopted it as a general rule applicable to a broad range of maritime cases.[53]

 Obviously, there is a split in Fifth Circuit jurisprudence. However, this Court finds the Nathaniel Shipping line of cases to be more well-reasoned and in accord with the intent of the general American rule. This Court finds that the rule of Strachan Shipping is applicable only to the situation where the shipowner is held to be liable, without fault, to the tortfeasor's employees. The rule is not applicable where, as in this case, the shipowner seeks indemnity for costs incurred in prosecuting its own claim for damages. Therefore, the Court grants HBM's motion for summary judgment to the extent that it finds TPT's claim for indemnity for attorneys' fees expended in pursuing its own barge damage claim to be without legal merit. Because the Court finds that TPT is not entitled to attorneys' fees in connection with its barge damage claim, there is no need for the Court to make a finding regarding HBM's potential breach of the warranty of workmanlike performance.

### III. Liability of Hall–Buck Marine

TPT originally asserted that Hall–Buck had contractually assumed responsibility for the safety of all of HBM's employees. However, TPT subsequently withdrew its claim that a contractual relationship between TPT and Hall–Buck or between TPT and HBM existed. Despite this, TPT continues to refer to HBM as "HBM/Hall–Buck" in its pleadings as though the two corporations are a single entity. TPT presents no facts which would point to the individual negligence of Hall–Buck, except to make the broad based assertion that even if barred by the LHWCA from bringing suit against the employer of the claimants, it could still maintain a claim for indemnity against Hall–Buck "as Hall–Buck Marine breached its WWLP to TPT, in failing to have a proper safety program in place at the River Plant and in failing to see to it that HBM's employees received proper training in barge cleaning."[54]

TPT has failed to show that Hall–Buck had any duty to oversee HBM's operations. In general, a parent corporation may not be held vicariously liable for the torts of its subsidiary.[55] No evidence has been presented which would allow this Court to find that Hall–Buck was negligent[56] or owed any duty of workmanlike performance to TPT. It is not enough that Hall–Buck is the parent company of HBM. In the alternative, even if Hall–Buck was found to be negligent for its own actions or

---

52. *Strachan,* 324 F.2d 746.

53. *Robertson, supra note* 48, n. 186.

54. Rec. Doc. No. 290 (TPT's memorandum in support of its motion for summary judgment) at 20–21.

55. *United States v. Bestfoods,* 524 U.S. 51, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998).

56. TPT did not allege any individual acts of negligence by Hall–Buck in its motion for summary judgment. However, in the documents filed in preparation for oral arguments, TPT has made some unsubstantiated allegations regarding the actions of Hall–Buck.

inactions, TPT does not have a claim against Hall–Buck for the same reasons that it does not have a claim against HBM. Even if Hall–Buck was found to owe a duty, TPT cannot show that it was exposed to liability without fault due to a breach of the warranty of workmanlike performance. Ryan simply does not apply in this case.

Therefore, summary judgment is appropriate insofar as it dismisses the claims of TPT against Hall–Buck.

## IV. Conclusion

For the reasons discussed herein, HBM's motion for summary judgment is GRANTED. TPT's motion for summary judgment is DENIED.

Judgment shall be entered accordingly.